Docket No. 99977.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PERI ALLEN, Appellee.

*Opinion filed June 2, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald and Garman concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justices McMorrow and Kilbride.

## OPINION

After a jury trial in the circuit court of Will County, defendant, Peri Allen, was found guilty of burglary and was sentenced to a four-year term of imprisonment. The appellate court reversed and remanded for a new trial, holding that defendant had "adequately alleged plain error" where the trial court abused its discretion in requiring defendant to wear an electronic stun belt as a restraining device at trial without the explicit analysis and finding of necessity required by *People v. Boose*, 66 Ill. 2d 261 (1977). 354 Ill. App. 3d 442, 446. We granted the State's petition for leave to appeal under Rule 315 (177 Ill. 2d R. 315), and granted Paul J. Kaupas, Will County sheriff, permission to file an *amicus curiae* brief in support of

the State (155 Ill. 2d R. 345(a)).

Defendant was indicted for the offense of burglary for entering a motor vehicle, belonging to Will County Auto Wreckers, with the intent to commit a theft. Prior to jury selection on February 11, 2003, defense counsel asked to approach the bench for a sidebar conference with the trial judge, after which the judge stated: "Apparently the defendant still has his handcuffs on. They have been under the table there, so the jurors didn't get all the way into the courtroom so there should be no problem, but if we can take them off now. Okay. Thank you." Two days later, after the trial court's denial of defendant's motion for a directed verdict and immediately prior to the State resting and defense counsel calling defendant to the stand, the following colloquy occurred:

> "[Defense Counsel]: Oh, your Honor, one thing. I don't know exactly what it is that [defendant] has. There is something that he is wearing on his back and–
>
> THE COURT: Well, it is under his clothes, correct?
>
> [Defense Counsel]: Right, but even standing here I can notice it. It is a fairly noticeable object.
>
> THE COURT: Would you prefer to just have him seated in the witness stand at this point?
>
> [Defense Counsel]: *I would prefer unless that can be removed somehow*.
>
> THE COURT OFFICER: No.
>
> THE COURT: That's a security device. The deputy has control of it. [Defendant] does not have shackles on. He does not have handcuffs on. He is in custody and he is restrained in no other manner whatsoever, so for security purposes we keep that on him. At this time it has been out of view. It is under his clothes, but I think that if he did walk across the room, [the jury] may view something or a form of some kind under his clothes, so if you prefer to have him seated in the box, we can do that now.
>
> [Defense Counsel]: Can we do that now?
>
> THE COURT: Have a seat right up here, sir. When you're sworn in, I suppose you can just sit. You don't have to stand to be sworn in.

DEFENDANT: Right.

THE COURT: That way they'll never see it. All right, bring the jurors in." (Emphasis added.)

No further mention of the "security device" was made at trial, and defendant did not include any issue concerning the restraint in his posttrial motion.

On direct appeal, the sole issue raised by defendant was "whether it was error for the defendant to be forced to wear an electronic security belt as a restraining device at trial." 354 Ill. App. 3d at 443. Initially, we agree with the appellate court that while the trial court never referred to the "security device" as an electronic stun belt, "we feel confident in our assessment that it was indeed that type of restraining device." 354 Ill. App. 3d at 443. The State does not suggest what the bulging security device under defendant's shirt might have been, other than a stun belt. The appellate court's finding is especially probable where, in *People v. Martinez*, 347 Ill. App. 3d 1001, 1003 (2004), another recent Will County circuit court case, the State asked the appellate court to validate the Will County sheriff's "standard operating procedure" of requiring all felony defendants in custody to wear a stun belt while appearing in court. Even the dissent agrees that such a "blanket policy" existed in the Will County sheriff's department. Slip op. at 31 n.6 (Freeman, J., dissenting, joined by McMorrow, J. and Kilbride, J.) In addition, there is at least one other case pending before this court involving the use of electronic stun belts on felony defendants in Will County. See *People v. Johnson*, 356 Ill. App. 3d 208 (3d Dist. 2005), *leave to appeal pending*, No. 100451.

Having agreed with the appellate court that defendant was wearing an electronic stun belt, we now examine whether *Boose*, which generally applies to the "physical restraint" of defendants in the courtroom (*Boose*, 66 Ill. 2d at 266), also applies to the concealed electronic restraint involved in this case. First, the Will County sheriff, as *amicus curiae*, argues, *inter alia,* that an electronic "security belt" is not a restraining device that lends itself to due process scrutiny pursuant to *Boose*, citing *Deck v. Missouri*, 544 U.S. ___, 161 L. Ed. 2d 953, 125 S. Ct. 2007 (2005). However, *Deck* does not speak to the circumstances present here. In *Deck*, the United States Supreme Court concluded that due process "prohibit[s] the use

of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." (Emphasis added.) *Deck*, 544 U.S. at ___, 161 L. Ed. 2d at 963, 125 S. Ct. at 2012. Nowhere in *Deck* does the Court consider the question raised herein, *i.e.*, whether a *concealed electronic stun belt* worn under a defendant's garments should be classified as a "physical restraint" which lends itself to due process scrutiny. Accordingly, *Deck* does not support the argument of *amicus*, as it does not even address concealed restraints. Indeed, we find that the *Deck* Court's stated reasons which prompt due process scrutiny in visible restraint cases–the presumption of innocence, securing a meaningful defense, and maintaining dignified proceedings–may be applied with like force to stun belts which are not necessarily visible to the jury. See *Deck*, 544 U.S. at ___, 161 L. Ed. 2d at 963-64, 125 S. Ct. at 2013.

In *In re Staley*, 67 Ill. 2d 33, 37 (1977), this court stated:

> "The possibility of prejudicing a jury, however, is not the only reason why courts should not allow the shackling of an accused in the absence of a strong necessity for doing so. The presumption of innocence is central to our administration of criminal justice. In the absence of exceptional circumstances, an accused has the right to stand trial 'with the appearance, dignity, and self-respect of a free and innocent man.' [Citation.] It jeopardizes the presumption's value and protection and demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged."

Thus, even when there is no jury, any unnecessary restraint is impermissible because it hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings. See *Staley*, 67 Ill. 2d at 36-37; *Martinez*, 347 Ill. App. 3d at 1005-06. We therefore agree with the appellate court herein which, citing *Martinez*, concluded that an electronic stun belt "is no less a restraint than manacles or handcuffs." 354 Ill. App. 3d at 445.

As noted by defendant, it appears that almost every court which has reviewed this issue has held that electronic stun belts are restraining devices the use of which is subject to the same restrictions

as shackles. See, *e.g.*, *United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000); *People v. Mar*, 28 Cal. 4th 1201, 1219-20, 52 P.3d 95, 106, 124 Cal. Rptr. 2d 161, 175 (2002); *People v. Melanson*, 937 P.2d 826, 835 (Colo. App. 1996); *Young v. State*, 269 Ga. 478, 479, 499 S.E.2d 60, 61 (1998); *State v. Adams*, 103 Ohio St. 3d 508, 529-30, 817 N.E.2d 29, 52-53 (2004). One exception to this approach for dealing with electronic stun belts is found in *Wrinkles v. State*, 749 N.E.2d 1179, 1194 (Ind. 2001), wherein the Supreme Court of Indiana banned the use of such restraints from its courtrooms altogether. However, contrary to the dissent's contention, in this case we are not faced with the question of whether stun belts should continue to be used in Illinois courtrooms. Rather, we are asked to determine whether, and we find that, this court's holdings in *Boose* and *Staley* regarding shackles apply equally to those defendants who are restrained by means of an electronic stun belt worn under their clothing at trial, and that nothing in *Deck* precludes application of due process protections to such cases.

Given these findings, we hold that the use of electronic stun belts in the courts of this state is warranted only where there has been a showing of manifest need for the restraint. See *Boose*, 66 Ill. 2d at 265-66. This holding comes with the understanding that there are certain circumstances that will require restraint of a defendant at trial. Factors to be considered by the trial court in making this determination may include: (1) the seriousness of the present charge against the defendant, (2) the defendant's temperament and character, (3) the defendant's age and physical characteristics, (4) the defendant's past record, (5) any past escapes or attempted escapes by the defendant, (6) evidence of a present plan of escape by the defendant, (7) any threats by the defendant to harm others or create a disturbance, (8) evidence of self-destructive tendencies on the part of the defendant, (9) the risk of mob violence or of attempted revenge by others, (10) the possibility of rescue attempts by other offenders still at large, (11) the size and mood of the audience, (12) the nature and physical security of the courtroom, and (13) the adequacy and availability of alternative remedies. *Boose*, 66 Ill. 2d at 266-67.

The determination of whether and how to restrain a defendant is left to the discretion of the trial court, and a reviewing court examines whether the trial court has abused that discretion. *Boose*, 66 Ill. 2d at 267. The trial court should state for the record its reasons for

allowing the defendant to remain physically restrained, and it should give the defendant's counsel an opportunity to present reasons why the defendant should not be restrained. *Boose*, 66 Ill. 2d at 266. In this case, the State argues that the trial court did not abuse its discretion in ordering the stun belt to remain on defendant without conducting a *Boose* hearing. However, based on the record presented, we disagree. The only reason given by the court to sustain its ruling was that the restraint was necessary "for security purposes." While the security of the courtroom is indeed one of the factors to be considered, without further explanation or justification by the court and where it appears that no other "*Boose* factors" supported this decision, we find the trial court's ruling to be an abuse of its discretion.

Here, as in *Martinez*, the trial court never made a *Boose* analysis; it simply deferred to the judgment of the sheriff. We agree with the *Martinez* court that this abdication of the trial court's responsibility is not acceptable. "The court must rigorously control its own courtroom procedures and, consistent with the mandates of due process, protect the rights of the parties and the public." *Martinez*, 347 Ill. App. 3d at 1004. Indeed, the type of policy adopted by the Will County sheriff, requiring all custodial felony defendants to wear stun belts while in court, was frowned upon by this court almost 30 years ago in *Boose*.

> " 'The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. *** [T]he trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints *** unless there is a showing of necessity on the record. The court's summary denial of the motion to release defendant from his shackles was not based upon such a showing of record and implies a general policy of shackling all inmate defendants accused of violent crimes.' " (Emphasis added.) *Boose*, 66 Ill. 2d at 268, quoting *People v. Duran*, 16 Cal. 3d 282, 293, 545 P.2d 1322, 1329, 127 Cal. Rptr. 618, 625 (1976).

Accordingly, we hold that the trial court's failure to follow the procedures set forth in *Boose* before ordering that defendant continue to wear an electronic stun belt during his trial constitutes a due

process violation. See *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1021 (2004); *Martinez*; 347 Ill. App. 3d at 1004.

In *Martinez*, the appellate court, upon finding that the trial court had abdicated its responsibility to determine the measures necessary to assure courtroom security, reversed the defendant's conviction and remanded for a new trial. *Martinez*, 347 Ill. App. 3d at 1005. However, in this case, as the appellate court noted, defendant did not even mention the electronic restraint at any time until the third day of his trial, while the defendant in *Martinez* objected vigorously. 354 Ill. App. 3d at 445; see also *Staley*, 67 Ill. 2d at 35-38 (reversal and remand for new adjudicatory hearing required where no *Boose* hearing conducted by trial court after defense counsel moved that defendant's handcuffs be removed during adjudicatory hearing). Defense counsel's statement "I would prefer [defendant be seated in the witness stand before the jury returns] unless [the stun belt] can be removed somehow" does not constitute an objection, but merely an alternative to the court's suggestion on how to keep the jury from seeing the device under defendant's clothing. After the court rejected counsel's alternative suggestion to remove the restraint, counsel did not ask that an objection be noted on the record or that a *Boose* hearing be held, but simply deferred to the procedure suggested by the court.

The failure to object to alleged error at trial and raise the issue in a posttrial motion ordinarily results in the forfeiture of the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988).[1] The appellate court herein therefore reasoned that it must decide whether the trial court's error "was so significant that it warrants plain error review." 354 Ill. App. 3d at 445. The majority then determined that *People v. Doss*, 347 Ill. App. 3d 418 (2004), was controlling, as there "we found plain error, since the defendant was denied a fair trial because of the failure of the trial court to conduct the appropriate manifest need analysis before ordering the defendant to be shackled

---

[1]While courts often use the terms "forfeit," "waive," and "procedural default" interchangeably in criminal cases, for purposes of this opinion, we choose to use "forfeited" to mean issues that could have been raised, but were not, and are therefore barred. See *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005).

at trial." 354 Ill. App. 3d at 446. Thereafter, the appellate court held that here, as in *Doss*, defendant had "adequately alleged plain error" which justified its review and also required the reversal of defendant's conviction and remand for a new trial. 354 Ill. App. 3d at 446. We disagree with the appellate court's reasoning and also its conclusions.

Supreme Court Rule 615(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the trial court." (Emphasis added.) 134 Ill. 2d R. 615(a). In *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005), this court recently stated as follows:

> "The plain-error doctrine, as it has developed in Illinois, allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances. First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. [Citation.] Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court *may* consider a forfeited error in order to preserve the integrity of the judicial process. [Citations.] This so-called disjunctive test does not offer two divergent interpretations of plain error, but instead two different ways to ensure the same thing–namely, a fair trial." (Emphasis added.)

In another recent case, *People v. Brown*, 356 Ill. App. 3d 1088, 1090-91 (2005), the appellate court majority, as did the appellate court majority herein, cited *Doss* for the proposition that restraining defendants without a *Boose* hearing automatically constitutes plain error and is not subject to forfeiture. However, we agree with Justice Schmidt's partial dissent in *Brown*, which argued that the majority was misreading *Doss*. Indeed, Justice Schmidt, who authored the *Doss* opinion, stated: "*Doss* did not hold that it is always plain error to shackle a defendant without a *Boose* hearing. Rather, the shackling issue was reviewed under the plain error doctrine because we found the evidence closely balanced." *Brown*, 356 Ill. App. 3d at 1091

(Schmidt, J., concurring in part and dissenting in part). In the appeal before us, defendant appears to have accepted this interpretation of *Doss*. Indeed, defendant impliedly admits that the evidence was not closely balanced where he contends only that the second type of plain error occurred, stating: "[I]t was such a serious error that it threatened the fundamental fairness of the defendant's trial and the integrity of the judicial process."

In *Herron*, 215 Ill. 2d at 187, this court further described the second prong of the plain error test, stating: "In the second instance, the defendant must prove there was plain error *and* that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved \*\*\*. \*\*\* [However,] the burden of persuasion remains with the defendant." (Emphasis added.) Indeed, defendant, citing this passage from *Herron*, acknowledges that he bears the burden of persuasion as to whether the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. Thus, given the test for determining plain error under the "second prong" as set forth in *Herron*, we agree with *Crutchfield*, 353 Ill. App. 3d at 1021, a case from the Fifth District of the appellate court which, under facts similar to those presented here, held that even constitutional errors can be forfeited (see *People v. Thurow*, 203 Ill. 2d 352, 363-64 (2003)) if the error is not of such magnitude that it deprives the defendant of a fair trial. See *People v. Graham*, 206 Ill. 2d 465, 476 (2003). See also *People v. Barney*, 363 Ill. App. 3d 590 (2006); *People v. DuPree*, 353 Ill. App. 3d 1037 (2004) (both holding that the physical restraint of a defendant at trial does not automatically amount to plain error).

Moreover, a fair trial is different from a perfect trial. *Herron*, 215 Ill. 2d at 177; *People v. Bull*, 185 Ill. 2d 179, 214 (1998). The plain-error doctrine is not " 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *Herron*, 215 Ill. 2d at 177, quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978). Instead, it is a narrow and limited exception to the general rule of forfeiture, whose purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process. *Herron*, 215 Ill. 2d at 177. Thus, while defendant herein has proven a due process violation which

amounted to error by showing that he was required to wear an electronic stun belt at trial without the court having first determined that it was necessary, defendant has failed to persuade this court "that the error was so serious that it affected the fairness of [his] trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187; see also *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005) (the burden of persuasion remains with the defendant under the second prong of the plain error test, but before the court may apply either prong, there must be a plain error).

Here, defendant cannot, and does not, claim that the evidence presented was closely balanced. Further, he has not shown that his presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised. In fact, defendant wore the electronic device into the third day of his jury trial with no objection, complaint, or any apparent difficulty consulting with his counsel. Thus, we agree with the appellate court in *Nicholas* that although the failure to conduct a *Boose* hearing under these circumstances is an error, defendant's failure to object and to carry his burden of persuasion amounts to forfeiture of the error, where he cannot establish that it prevented him from obtaining a fair trial. See *Estelle v. Williams*, 425 U.S. 501, 512-13, 48 L. Ed. 2d 126, 135, 96 S. Ct. 1691, 1697 (1976) (although the State cannot compel an accused to stand trial before a jury in prison clothes, the failure to make an objection to the court to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation); see also *People v. Hyche*, 77 Ill. 2d 229, 241 (1979) (rejecting the defendant's contention that his conviction should be reversed due to his appearance before the venire in handcuffs, where he "waived any error by failing to object").

Further, we reject the dissent's attempt to distinguish *Estelle* and *Hyche*, where those cases, as here, recognized that a serious assault on the defendant's presumption of innocence was implicated, but held that the defendant had failed to properly preserve the error for review. *Estelle*, 425 U.S. at 513, 48 L. Ed. 2d at 135, 96 S. Ct. at 1697; *Hyche*, 77 Ill. 2d at 241. While the dissent contrasts *Hyche* with *People v. Buss*, 187 Ill. 2d 144, 215 (1999), wherein the court chose to review a shackling issue on its merits, the dissent fails to note that the defendant in *Buss* had filed a pretrial motion to preclude shackling and had included the issue in his posttrial motion. Only in

the alternative did he argue plain error or that his counsel was ineffective for failing to properly preserve the issue for review. Additionally, although the dissent states that this court, in *Buss,* "cited with approval *People v. Bennett*, 281 Ill. App. 3d 814 (1996)" (slip op at 23 (Freeman, J. dissenting, joined by McMorrow and Kilbride, JJ.)), the *Bennett* court held "it was plain error for the judge in this case to deny the defense request to have the defendant's shackles removed," when "the only reason the judge gave for refusing the defense motion related to the security of the courtroom" and the court failed to address the other *Boose* factors. *Bennett*, 281 Ill. App. 3d at 825.

Next, we note that in his dissent, Justice Freeman agrees with the majority opinion that the issue presented in this case is "whether defendant is entitled to a new trial because he was made to wear, without a showing of manifest need, an electronic stun belt as a restraining device during his trial." Slip op. at 16 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.). However, after defining the parameters of the case, the dissent goes on to enlarge those parameters by contending that we should also address the propriety of using stun belts in any criminal trial. While we might agree with some of the medical and other important concerns identified in the lengthy dissent, as we previously noted, the issue of whether to continue to use such restraints in Illinois courts is, unfortunately, simply not raised in this case. Thus, despite the dissent's desire for this court to determine whether stun belts are an acceptable form of restraint in Illinois, until a case comes before us which actually raises that particular issue, any attempt to answer such an abstract question would be improper. See *People v. Campa*, 217 Ill. 2d 243, 269 (2005) (as a general rule, a court of review will not decide moot or abstract questions or render advisory opinions).

Therefore, the dissent's claim that this court's opinion has "the effect of countenancing the continued use of stun belts" in Illinois, simply because we decline to engage in *dicta*, is unfair at best. Slip op. at 39 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.). Indeed, contrary to that assertion, the majority, in addressing the limited issues raised in this case of first impression, fully appreciates the impact that electronic restraints may have on a defendant's trial rights. This opinion sends a clear message to the trial courts: control of the courtroom is vested in the trial judge. While the sheriff may be

responsible for courtroom security, it is the trial judge who makes the determination as to how security involving a defendant who is on trial is handled, so as to fully protect his constitutional rights. Towards that end, a *Boose* hearing is required in stun belt cases, as in shackle or handcuff cases, because regardless of the differences between the types of restraints, they each implicate due process concerns and thus require strict limits be placed on their use.

Additionally, this opinion takes judicial notice of the routine use of stun belts on felons in other Will County cases in order to establish the fact of their use here, and cites cases both in and outside our jurisdiction in support of our holding that stun belts should be subject to a *Boose* hearing. The dissent, however, relies on information outside the record and cases outside our jurisdiction to speculate as to the type and effect of the stun belt worn in this case and to proselytize for a ban on the use of stun belts in Illinois, an issue which we have clearly determined to be outside the scope of this appeal. The facts are that defendant himself did not ask that we determine whether the "medical impact" or anxiety which stun belts may create makes them an improper form of restraint under all circumstances, and there is nothing of record to show that the type of electronic device worn in the nonprecedential cases cited by the dissent are in any way similar to the device worn by defendant. Further, although the dissent agrees that defendant has forfeited the issues regarding the trial court's requirement that he wear an electronic restraint where neither he nor his counsel made any overt complaint at trial or in a posttrial motion (*People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988), the dissent then invites speculation as to what defendant could have been experiencing. Such speculation is completely irrelevant and has no place in this court's review, which must be based solely on the facts of record. See *People v. Guerrero*, 356 Ill. App. 3d 22, 28-29 (2005); *People v. Colon*, 20 Ill. App. 3d 858, 864 (1974) (reviewing court cannot speculate as to facts that do not appear in the record).

A fair reading of the cold transcript leads us to the more likely conclusion that defendant was not suffering any of the anxiety or nervousness speculated upon by the dissent. As noted, what the record does show is that neither defendant nor his counsel objected to the *use* of the stun belt at any time. Counsel's only expressed concern, made on the third day of trial, when defendant was about to take the witness stand, was that whatever defendant was wearing under his

clothes might be visible to the jury as he walked across the room to take the stand. The colloquy between defense counsel and the trial judge clearly reveals that counsel did not even know what defendant was wearing under his clothes. This fact supports the inference that defendant never expressed any concern to his attorney about wearing the device, nor did it impinge on his ability to work with counsel. See *Buss*, 187 Ill. 2d at 217 (no error occurred where: (1) the trial court's initial failure to state his reasons for requiring shackling was "presumably because defense counsel indicated that defendant did not object to leg shackles so long as the jury did not see them;" (2) the court explained its reasons for the shackling in detail during its denial of the defendant's post trial motion; (3) "the tables in the courtroom had been skirted so that the shackling *** was 'never obvious to the jurors;' " and (4) defendant's ability to consult with counsel had not been hindered by the shackling). Here, the dissent can point to nothing of record which demonstrates that defendant was made nervous or anxious by the fact that he was wearing the device. Thus, none of the actions of defendant, his counsel or the court support the conclusion that defendant's presumption of innocence or the dignity of the court was effected by the error in failing to hold the requisite *Boose* hearing. Instead, counsel's concern about the possibility of the jury's seeing the bulky device under defendant's clothing was resolved by the trial court's action in seating defendant on the stand before the jury reentered the courtroom.

Further, we disagree with the dissent's claim that this procedure of "preseating" the defendant, because it was dissimilar to that used with previous witnesses, would cause the jury to "attach undue significance to such discrepancies." Slip op. at 29 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.). It is just as reasonable to draw the opposite conclusion, *i.e.*, that while those of us "trained in the law" (slip op. at 29 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.)) and familiar with court proceedings would know that it is somewhat unusual for witnesses to already be seated when court reconvenes and the jury reenters, few lay people, not being involved in jury trials on a regular basis, would actually discern this difference, much less impute a negative connotation toward defendant from it. Nor does the dissent's quotation from *Illinois v. Allen*, 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1061 (1970), that disparate treatment of defendant from other

witnesses not on trial " 'might have a significant effect on the jury's feelings about the defendant' " support his theory. Slip op. at 20, 29 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.), quoting *Illinois v. Allen*, 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1061 (1970). This comment by the Court in *Allen* in no way dealt with any disparate treatment of defendant from other witnesses, but concerned the jury's response to "the sight of shackles and gags" on that defendant after he displayed conduct which was disorderly, disruptive and disrespectful to the court. *Allen*, 397 U.S. at 343-44, 25 L. Ed. 2d at 359, 90 S. Ct. at 1061.

Finally, we object to the dissent's statement that "the unjustified use of the stun belt in this case is deemed inconsequential by a majority of this court." Slip op. at 39 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.). The instant matter presented a narrow issue which we have resolved through the consistent use of this court's previous case law. We have cited as controlling this court's findings in *Boose* and *Staley* that a trial court's failure to examine the necessity of requiring a defendant to wear restraints at trial is a due process violation, and continued this line of reasoning to include not only visible restraints, but the type of "semi-hidden" electronic device used herein. Therefore, contrary to the dissent's assertion, we have most definitely shown that an error such as occurred here has consequences. However, *Boose* and *Staley* , as well as *Martinez* and *Deck*, present a different factual situation which allows for a *per se* finding of reversible error which is not applicable under the facts presented in this case. Here, unlike the aforementioned cases where a trial objection was made, due to defendant's complete forfeiture of the issue, not only the fact of the error but proof that the error "affected the fairness of the defendant's trial and challenged the integrity of the judicial process" was necessary. *Herron*, 215 Ill. 2d at 187; see also *Barney*, 363 Ill. App. 3d at 597 ("The necessity to preserve the integrity and reputation of the judicial process is a purpose of the [plain error] doctrine, not a lone, triggering factor for its implementation"). Thus, simply because we follow the strict application of that doctrine as recently set forth in *Herron* and find that defendant has not met his burden of persuasion does not mean we are in conflict with our decisions in *Boose* and *Staley*; cases with different facts must be decided based on those facts. Nor is the Supreme Court's holding in *Deck* that a defendant

need not demonstrate actual prejudice to make out a due process violation contrary to our decision, which finds a due process violation but refuses to find plain error in the violation.

As this court stated in *People v. Blue*, 189 Ill. 2d 99, 138 (2000), "[t]o determine whether defendant's right to a fair trial has been compromised *** [under] the second prong of the plain error test *** [w]e ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair." We thus agree with the dissent and with defendant that the trial court's actions here amounted to error. However, under the circumstances presented, we are not persuaded that such error resulted in fundamental unfairness or caused a "severe threat" to the fairness of defendant's trial. See *People v. Durr*, 215 Ill. 2d 283, 298, 308 (2005). Thus, where defendant has failed to establish plain error under the second prong as set forth in *Herron*, we hold that the procedural default of this issue must be honored. See *Durr*, 215 Ill. 2d at 308; see also *Blair*, 215 Ill. 2d at 444 n.2 ("procedural default" relates to the failure by counsel to comply with certain procedural requirements which results in the forfeiture of the defendant's right to raise that error on appeal). Because we find that the right to review is forfeited in this case, we need not reach the question which divided the appellate court below, *i.e.*, whether a new proceeding or merely a retrospective *Boose* hearing is the proper remedy where plain error has occurred.

For these reasons, the judgment of the appellate court is reversed and the judgment of conviction entered by the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE FREEMAN, dissenting:

The issue in this case is whether defendant is entitled to a new trial because he was made to wear, without a showing of manifest need, an electronic stun belt as a restraining device during his trial. This court has never addressed the propriety of using this particular kind of restraint at a criminal trial. However, as today's opinion makes clear, there exists a body of our case law which addresses how other types of security devices impact upon a defendant's trial rights. Indeed, the court acknowledges that the "stated reasons which prompt

due process scrutiny in visible restraint cases–the presumption of innocence, securing a meaningful defense, and maintaining dignified proceedings–may be applied *with like force to stun belts which are not necessarily visible to the jury*." (Emphasis added.) Slip op. at 4. My colleagues in the majority then hold that this court's holdings in *People v. Boose,* 66 Ill. 2d 261 (1977), and *In re Staley*, 67 Ill. 2d 33 (1977), "*apply equally* to those defendants who are restrained by means of an electronic stun belt worn under clothing at trial and that nothing *** precludes applications of due process protections to such cases." (Emphasis added.) Slip op. at 5. The court further holds that a "trial court's failure to follow the procedures set forth in *Boose* before ordering that defendant continue to wear an electronic stun belt during his trial [constitutes] a due process violation." Slip op. at 6-7. However, in finding that an error of constitutional proportions has occurred in this case, the court states that "it is not persuaded that the error resulted in fundamental unfairness or caused a 'severe threat' to the fairness of his trial." Slip op. at 15. After considering our case law on restraints and the nature of the electronic stun belt, I am persuaded that the error resulted in fundamental unfairness or caused a "severe threat" to the fairness of the trial. I would hold that defendant has satisfied the second prong of our plain error rule, *i.e.*, that the error was so serious that it affected the fairness of defendant's trial and that it challenged the integrity of the judicial process For these reasons, I dissent.

I

The court correctly notes that defendant did not properly preserve this issue for review. While my colleagues view the remarks between defense counsel and the trial judge as a failure to object, I view them somewhat differently. Defense counsel stated that his preference was for defendant *not to wear* the belt at all. As the excerpt from the transcript demonstrates, however (see slip op. at 2-3), the trial judge made clear that such a preference would be out of the question. In other words, the use of the belt was not open to argument. I would characterize the colloquy between the two as being enough to register a contemporaneous objection. This is an academic quibble, however, as defendant did not include the matter in his posttrial motion, and his failure to do so results in the issue's procedural default on appeal.

*People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Nevertheless, this court has long recognized that the doctrine concerning procedural default is not absolute. *People v. Carlson*, 79 Ill. 2d 564, 576 (1980), citing *People v. Burson*, 11 Ill. 2d 360 (1957). Indeed, this court has developed a plain-error doctrine which allows a reviewing court to reach a forfeited error in certain circumstances. The doctrine, adopted formally as Supreme Court Rule 615, serves as " 'narrow and limited exception' to the general *** rule [of procedural default].' " *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982).

This court has recently acknowledged that the purpose of the doctrine is "to protect the rights of the defendant and the integrity and reputation of the judicial process." *People v. Herron*, 215 Ill. 2d 167, 177 (2005), citing *People v. Howell*, 60 Ill. 2d 117, 121 (1975). In *Herron*, we reaffirmed that our plain-error doctrine allows a reviewing court to consider unpreserved error in two distinct circumstances: (i) in instances of prejudicial error which may have affected the outcome in a closely balanced case, and (ii) in instances of presumptively prejudicial error which must be remedied even though it may not have affected the outcome. *Herron*, 215 Ill. 2d at 185. Under the first prong, a defendant must both prove that an error occurred (see *People v. Sims*, 192 Ill. 2d 592, 621 (2000) quoting *People v. Wade*, 131 Ill.2d 370, 376 (1989) ("[b]efore invoking the plain error exception, however, 'it is appropriate to determine whether error occurred at all' ")) and that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant."*Herron*, 215 Ill. 2d at 187. Under the second prong, a defendant must prove both that an error occurred and that

> the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] *Prejudice to the defendant is presumed because of the importance of the right involved* [emphasis added], '*regardless* of the strength of the evidence.' (Emphasis in original.) *Blue*, 189 Ill. 2d at 138. In both instances, the burden of persuasion remains with the

defendant." *Herron*, 215 Ill. 2d at 187.

Under the first prong, a defendant must establish that he was prejudiced by the error. Under the second prong, defendant need not establish specific prejudice, but rather, must show that the error served to erode the integrity of the judicial process and undermined the fairness of the trial proceedings.

It is important to distinguish between the two prongs of the rule. As this court noted in *People v. Mullen*, 141 Ill. 2d 394, 402 (1990), in cases "where the evidence is closely balanced, the probability that a defendant's conviction was caused by even a minor trial error is greatly enhanced." Therefore, in those cases, the court will invoke the plain error rule so that it can determine whether an error, which was not objected to at trial and in post-trial motions, raises doubts as to the validity of the jury's verdict." Thus, the reviewing court concerns itself with the specific effect that an alleged error may have had on the jury. In contrast, the second prong of the rule encompasses those errors "of such magnitude that the commission thereof denies the accused a fair and impartial trial." *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980). As Justice Ryan explained over 25 years ago,

> "under this second aspect of the plain error rule, the errors that will be considered as not having been waived, although not properly preserved, are those that are so fundamental to the integrity of the judicial process that they cannot be waived or forfeited by the failure to raise them in the trial court. I also believe that, being so fundamental to the integrity of the judicial process, they must be considered by the court regardless of the guilt of the defendant and therefore the harmless error test, even harmless error beyond a reasonable doubt, is not relevant." *People v. Green*, 74 Ill. 2d 444, 456-57 (1979) (Ryan, J., specially concurring).

Thus, this prong is designed to give the court the ability to act in those cases where systemic, structural errors serve to undermine the presumptions of fairness that normally attach to our criminal trials. As such, very few errors will fall within its ambit. The second prong of our test thus "guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Herron*, 215 Ill. 2d at 186.

Relying on *Herron*, defendant argues that the error committed by

the circuit court in this case eroded the integrity of the judicial process and undermined the fairness of his trial. He contends that he has satisfied his burden of persuasion because the error involved here is so serious that prejudice can be presumed. In other words, he argues that plain error occurred in this case pursuant to the second prong of our plain error rule. The court responds to this argument by noting "even constitutional errors can be forfeited [citation] if the error is not of such magnitude that it deprives the defendant of a fair trial." Slip op. at 9. Finding that defendant "has not shown that his presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised," the court concludes that while error occurred, the error did not result in fundamental unfairness. Slip op. at 10. I disagree.

It has long been recognized that an accused should never be placed in restraints in the presence of the jury " 'unless there is a showing of a manifest need for such restraints.' " *Boose*, 66 Ill 2d at 265-66 , quoting People v. Duran, 16 Cal. 3d 282, 290-91, 545 P.2d 1322, 1327, 127 Cal. Rptr. 618, 623 (1976); see also *Deck v. Missouri*, 544 U.S. __, ___,161 L. Ed. 2d 953, 963, 125 S. Ct. 2007, 2012 (2005) (acknowledging that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial"). This means that a defendant has the right to appear without restraints, unless such restraints are necessary to prevent escape, to protect the safety of those in the courtroom, and to maintain order during trial. *Boose*, 66 Ill. 2d at 266; *Deck*, 544 U.S. at __, 161 L. Ed. 3d at 962, 125 S. Ct. at 2012. This determination is left to the discretion of the trial judge, who should select the type of restraint suitable in light of all of the circumstances. *Boose*, 66 Ill. 2d at 266. This court requires that, in such cases, the trial judge (i) allow a defendant to be heard on the question of restraint, (ii) state for the record the reasons for allowing a defendant to be placed in restraints, and (iii) make this determination outside of the presence of the jury. On appeal, such a decision will be reviewed for abuse of discretion. *Boose*, 66 Ill. 2d at 267.

Courts from all jurisdictions have recognized that the foregoing procedures are necessary in restraint cases because placing a defendant in restraints impacts on a defendant's right to due process

in several different ways. Shackles and gags visible to the jury "might have a significant effect on the jury's feelings about the defendant." *Illinois v. Allen*, 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1061 (1970). As such, the presumption of innocence that a defendant enjoys may be eroded. Courts have also found that restraints may restrict a defendant's ability to assist counsel during the trial and offend the dignity of the judicial process. *Deck*, 544 U.S. at __, 161 L. Ed. 2d at 963-64, 125 S. Ct. at 2013.

This court has long acknowledged these very concerns in restraint cases. For example, in *Boose*, the defendant, a 15-year-old, was charged with murder. The juvenile court waived jurisdiction of the case and transferred it to the criminal division of the circuit court. Subsequent to the defendant's indictment, the defendant successfully moved for a hearing to determine whether he was competent to stand trial. The defendant was brought to court wearing handcuffs which were threaded through shackles attached to a restraining belt wrapped around his waist. The defendant's attorney moved that all of the restraints be removed whenever the jury was present. The trial judge denied the motion, stating that "due to the nature of the charges against the defendant, I believe it would be better to have the shackles remain." See *Boose*, 66 Ill. 2d at 265. After the jury found the defendant competent to stand trial, his attorney moved for a new trial, arguing that the shackling of the defendant was not necessary. The trial judge denied the motion. Defendant then pled guilty to the charge of murder and was sentenced to a term of imprisonment. On appeal, the appellate court reversed, holding that the trial judge abused his discretion by ordering that the defendant appear shackled before the jury at the hearing on his competency. *Boose*, 66 Ill. 2d at 264.

Noting that an "accused should never be placed in restraints in the presence of the jury 'unless there is a showing of a manifest need for such restraints,' " this court affirmed the judgment of the appellate court. *Boose*, 66 Ill. 2d at 265-66, quoting *People v. Duran*, 16 Cal. 3d 282, 290-91, 545 P.2d 1322, 1327, 127 Cal. Rptr. 618, 623 (1976). The court emphasized the three distinct due process concerns the question raised and then described the various factors that should be considered by the trial judge when determining whether such a manifest need exists. *Boose*, 66 Ill. 2d at 266-67. In so holding, the court specifically rejected the notion that the nature of the charges

alone could justify the use of restraints. *Boose*, 66 Ill. 2d at 267-68. Rather, the decision to use restraints must be made on a case-by-case basis, and should not be the product of a general policy of imposing restraints on all criminal defendants. *Boose*, 66 Ill. 2d at 267-68. In rejecting the State's contention that the need for such standards on the question of shackling at a competency hearing is not as great as it might be at the actual trial to determine guilt or innocence, this court noted that a fair trial, in all its stages, " 'is a fundamental requirement in a criminal prosecution and when such requirement is not met, it amounts to a denial of due process of law' " no matter " 'how strong the evidence against an accused may be.' " *Boose*, 66 Ill. 2d at 269, quoting *People v. Finn*, 17 Ill. 2d 614, 617 (1959).

Two months later, in *Staley*, this court reaffirmed its teaching in *Boose*. In *Staley*, a juvenile defendant was found delinquent for severely beating a teacher in the detention home where the defendant had been previously placed. At his initial hearing before the juvenile court, the assistant Attorney General recommended that the defendant remain handcuffed. The trial judge followed the recommendation, stating that he did not want the behavior that occurred at the detention home to occur in the courtroom. At the ensuing adjudicatory hearing held on the State's petition for delinquency, the defendant's attorney asked that the handcuffs be removed. The trial judge denied the motion, and ultimately found the defendant delinquent. On appeal, the appellate court reversed and remanded the matter for a new adjudicatory hearing because the trial judge erred in requiring the defendant to appear at the adjudicatory hearing in handcuffs. *Staley*, 67 Ill. 2d at 35-36.

In affirming the appellate court's judgment, this court noted, once again, the three distinct trial rights that restraints negatively impact, *i.e.*, the presumption of innocence, the ability to assist in the defense, and the dignity of the judicial process. This court rejected the State's contention that, because the adjudicatory hearing took place before a judge and not a jury, no error occurred. Prejudice to the jury, the court noted, was not the only reason why shackling had been disapproved:

> "In the absence of exceptional circumstances, an accused has the right to stand trial 'with the appearance, dignity, and self-respect of a free and innocent man.' [Citation.] It jeopardizes

the presumption's value and protection and demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged." *Staley*, 67 Ill. 2d at 37.

The court emphasized that in the absence of a showing of manifest need, "which must be established clearly on the record," an accused "cannot be tried in shackles whether there is to be a bench trial or a trial by jury." *Staley*, 67 Ill. 2d at 38. The court did not engage in any type of harmless error analysis, despite the fact that the utility of such an inquiry was raised in the dissent. See *Staley*, 67 Ill. 2d at 41-42 (Ryan, J., dissenting) (arguing that defendant "should be required to demonstrate that he has in some manner suffered prejudice by being handcuffed during the trial").

In examining the holdings in both *Boose* and *Staley*, it becomes clear that the court was concerned with more than the effect that shackles would have on the fact finder's ability to adjudicate guilt in light of a defendant's right to the presumption of innocence. Both cases identify other trial rights that have the potential to be negatively impacted by the unjustified use of restraints, namely, the defendant's right to participate and assist in his defense and the right to a dignified trial proceeding. The importance of the latter right, the right to a dignified trial proceeding, was certainly at the center of this court's decision in *Staley*, where the court ordered a new trial despite the fact that the adjudicatory proceeding in question was tried by a judge and not a jury and where the court chose not to apply a harmless-error analysis to the case. Thus, the court in *Staley* considered the error to be so egregious that actual prejudice need not be shown and that it was of no import if the defendant was shackled in front of a jury or a judge.

Since our decision in *Staley*, this court has not spoken with clarity with respect to what happens if a defendant raises the issue of unjust restraint on appeal without properly preserving it in the trial court. For example, in *People v. Hyche*, 77 Ill. 2d 229 (1979), the defendant claimed that his conviction must be reversed because he appeared before the venire in handcuffs on the first day of jury selection. This court held that defendant "waived any error by failing to object to his appearance in handcuffs." *Hyche*, 77 Ill. 2d at 241. In so holding, this court found that the United States Supreme Court's opinion in *Estelle*

*v. Williams*, 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976), provided guidance on the question. In *Estelle*, the defendant appeared at trial in prison garb without objection. The Supreme Court held that the State cannot, consistent with the fourteenth amendment, compel an accused to stand trial before a jury while dressed in identifiable prison garb, however, the defendant's failure to raise an objection "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Hyche*, 77 Ill. 2d at 241. This court found that a similar conclusion was justified in *Hyche* "since similar considerations involving a defendant's right to the presumption of innocence are implicated when the defendant appears before the jury in handcuffs." *Hyche*, 77 Ill. 2d at 241. The court also rejected defendant's contention that *Staley* and *Boose* mandated a different result: "[Those cases] are distinguishable in that the defendants there, unlike the defendant here, were improperly compelled to appear in handcuffs over objection." *Hyche*, 77 Ill. 2d at 241.

In contrast to *Hyche*, this court in *People v. Buss*, 187 Ill. 2d 144 (1999), declined to hold a shackling claim waived and, instead, elected to address the issue on the merits. In so doing, the court cited with approval *People v. Bennett*, 281 Ill. App. 3d 814 (1996), which found plain error existed when a defendant did not properly preserve the issue of unnecessary shackling. In *Bennett*, the defendant, like defendant here, asked that his restraints (shackles) be removed, and, just like defendant here, did not include the issue in his post-trial motion. The appellate court held that despite the defendant's failure to properly preserve the issue, plain error allowed for the court to address the issue and provide relief. *Bennett*, 281 Ill. App. 3d at 823-25,

In my view, the value of *Hyche* to today's discussion is limited for several reasons. First, the case dealt with a question of pretrial restraint as opposed the present case, which concerns a defendant who was restrained throughout the entirety of his adjudicatory proceeding. Specifically, the defendant in *Hyche* appeared in a single handcuff before members of the venire on the first day of jury selection. It is unclear from the court's opinion in *Hyche* how many of the venire members who saw the defendant so restrained ultimately served on the jury, as the opinion indicates the jury was not selected in a single day. More importantly, however, *Hyche* is inconsistent with the principles announced in *Boose* and *Staley*. In contrast to

˘23˘

those cases, the *Hyche* court focused on only one of the three trial rights previously identified in *Staley* and *Boose* as being the focus of the restraint issue, *i.e.*, the presumption of innocence, and failed to mention the other two trial rights, the ability to assist and participate in the defense and the right to dignified proceedings. For this reason, the *Hyche* court's observation that *Estelle* provided guidance to the question missed the mark. As I noted previously, *Estelle* addressed the propriety of appearing before a jury in prison garb without objection. While being seen by the jury in prison garb might well devalue the presumption of innocence, prison attire is not the equivalent of physical restraints. Unlike manacles, prison clothes do not restrict movement such that the ability to assist in the defense is compromised. Prison clothes also do not undermine the dignity of the courtroom in the same way that the use of shackles has traditionally been found to do. The United States Supreme Court has acknowledged the deep-rooted, historical aversion the judiciary has long had toward trying a criminal defendant in restraints:

> "The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment. And it reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve. The routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives. As this Court has said, the use of shackles at trial 'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.' *Allen*, *supra*, at 344; see also *Trial of Christopher Layer*, 16 How. St. Tr., at 99 (statement of Mr. Hungerford) ('[T]o have a man plead for his life' in shackles before 'a court of justice, the highest in the kingdom for criminal matters, where the king himself is supposed to be personally present' undermines the 'dignity of the Court).' " *Deck v. Missouri*, 544 U.S. at __, 161 L. Ed. 2d at 964, 125 S. Ct. at 2013.

These concerns clearly underscore the critical differences between prison garb and physical restraints. For this reason, *Hyche*'s reliance

on *Estelle* is not persuasive as the case is not truly relevant to the question presented in *Hyche*. Finally, the court in *Hyche* did not address plain error in any way.

This court's more recent opinion in *Buss* certainly does not follow the analysis set forth in *Hyche*. In *Buss*, as I noted previously, we rejected the defendant's claim of improper shackling, but in so doing, we eschewed the State's claims of waiver and decided the question on its merits. Our opinion did not cite to *Hyche*, but instead cited to an appellate court decision which found plain error in the unjustified use of restraints at trial even though the defendant had failed to include the issue in his post-trial motion.

After reviewing our precedents, I find the *Staley* court's refusal to subject the error to a harmless-error analysis to be important to today's discussion regarding the second prong of the plain error rule. In essence, the court's refusal to predicate a reversal on actual prejudice in *Staley* reveals that the court was more concerned with the error's ramifications on the proceedings as a whole. As I noted previously, in *Staley*, the defendant was not tried by a jury, but by a judge. Surely a judge understands the presumption of innocence and would not equate the presence of restraints on a defendant with that defendant's guilt of the charged crime. Yet, this court still reversed despite this fact and without a showing of prejudice because unjust shackling jeopardized more than the value and protection of the presumption of innocence. It also "demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles *or other restraints* while he is being judged." (Emphasis added.) *Staley*, 67 Ill. 2d at 37. Thus, the error did not just affect the defendant's substantial rights, it seriously affected the fairness, integrity and public reputation of the judicial proceedings and it was the systemic effect on the trial proceedings as a whole that warranted the new trial in *Staley*. If this is so, then why are not these same concerns, which clearly are present in all restraint-without-manifest-cause cases, not enough to satisfy the second prong of our plain error rule? As this court noted in *People v. Blue*, 189 Ill. 2d 99, 138 (2000), "prejudice to a defendant's case is not the sole concern that drives our analysis of defendant's appeal." We further recognized in *Blue* that when a defendant's right to a fair trial has been denied, "this court must take corrective action so that we may preserve the integrity of the judicial process." *Blue*, 189 Ill. 2d at 138. In so doing, we pointed

specifically to the second prong of the plain error rule:

> "To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever it applies the second prong of the plain error test. 134 Ill. 2d R. 615(a). We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair. ***
>
> *** [W]hen an error arises at trial that is of such gravity that it threatens the very integrity of the judicial process, the court must act to correct the error, so that the fairness and the reputation of the process may be preserved and protected." *Blue*, 189 Ill. 2d at 138.

I note that these concerns echo the United States Supreme Court's observations about the importance to the criminal justice system of maintaining dignified proceedings in which defendants are treated respectfully. Contrary to the court's assertions, it today is not "follow[ing] the strict application of [the plain error] doctrine as recently set forth in *Herron*" (slip op. at 15), rather it is corrupting the second prong of the rule by requiring defendant to establish that he was specifically prejudiced even though the rule itself does not require a showing of prejudice.

In light of the above, it is unclear to me how this defendant's failure to raise this matter in the posttrial motion transforms what would have been a due process violation not subject to a harmless error analysis into an error that now requires a showing of actual prejudice in order to warrant relief. To the extent that the court finds *Estelle v. Williams* relevant to this issue (slip op. at 10). I strongly disagree. As I discussed above, in *Estelle*, the issue before the Supreme Court was whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws. In addressing this issue, the Court acknowledged that the "particular evil" in these types of cases is "compelling a defendant, against his will, to be tried in jail attire." *Estelle*, 425 U.S. at 507, 48 L. Ed. 2d at 133, 96 S. Ct. at 1694-95. However, the Court noted that case law showed that it was "not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury" especially in Texas, where the defendant had been tried. *Estelle*, 425 U.S. at 508, 48 L.

Ed. 2d at 133, 96 S. Ct. at 1695. For this reason, the Court found that it was necessary for a defendant to register an objection to the jail attire before the trial judge so as to show the lack of compulsion. Unlike the Court in *Estelle*, I can point to no case law which reveals that it is a common defense tactic to produce a defendant in restraints in the hope of eliciting sympathy from the jury. I further note that the Court in *Estelle* in no way likened appearing before the jury in jail attire with the use of physical restraints. In fact, the Court pointed out that the decision to have a defendant appear in jail attire is one that belongs to defense counsel, not the trial judge.[2] In contrast, case law makes clear that the decision to use restraints at trial lies solely in the discretion of the trial judge. A careful reading of *Estelle* thus demonstrates that it provides little guidance to the question presented

---

[2]The court "reject[s] the dissent's attempt" (slip op. at 11) to distinguish *Estelle*. The court's rejection is made without any real discussion of the salient points of the United States Supreme Court's analysis as it fails to discuss the importance the invited-error doctrine had on the United State Supreme Court's analysis in refusing to excuse the defendant's procedural default.

in the case at bar.[3]

I believe that in order to determine whether the second prong of the plain error rule is satisfied in this case, it is essential for us to evaluate the general characteristics of a stun belt, especially in this case because it appears from the trial judge's remarks that he believed that such a restraint was preferable to handcuffs or shackles. I believe we must assess what kind of impact a restraint such as an electronic stun belt has on a defendant's trial rights, particularly those rights that have been traditionally recognized as having the most potential to be affected by the use of restraints at trial (*i.e.*, the presumption of innocence, the right to consult with counsel, and the maintenance of dignity in the judicial process), and whether that impact results in fundamental unfairness or causes a severe threat to the fairness of the trial such that the second prong of our plain error rule is implicated. To answer these questions, I look to the same opinions from other

---

[3]I would further note that in *Estelle* there was no objection made at all during the proceedings, which strengthened the Court's conclusion that the defendant chose to wear the jail attire as part of some trial strategy. In this case, it is clear that an objection was made to the wearing of the stun belt by defense counsel, who indicated that he preferred that defendant not wear the belt. The record indicates that counsel's request was denied by both a court officer and the trial judge, who stated that the device would remain on defendant. This type of exchange made on the record is enough in my view to establish that defendant was "compelled" to wear this restraint during this trial. Thus, I believe this record sufficiently establishes the element of "compulsion" that the United States Supreme Court found wanting in *Estelle*.

jurisdictions where this issue has been previously addressed that my colleagues cite in their opinion.

With respect to the presumption of innocence, courts have recognized that they must "guard against practices that unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." *Wrinkles v. State*, 749 N.E.2d 1179, 1193 (Ind. 2001) (and cases cited therein). In this case, the State claims that the electronic stun belt was not visible to the jury. The record, however, does not reflect that the belt was invisible. Indeed, the belt is described in the record as a "fairly noticeable object."[4] The fact that the belt is, in fact, somewhat noticeable has been a source of concern to the Eleventh Circuit Court of Appeals, which has stated that

> "if the stun belt protrudes from the defendant's back to a noticeable degree, it is at least possible that it may be viewed by the jury. If seen, the belt 'may be even more prejudicial than handcuffs or leg irons because it implies that unique force is necessary to control the defendant.' [Citation.]" *Durham*, 287 F.3d at 1305.

Moreover, the record here establishes that the bulge from the belt was noticeable enough to cause the trial judge to break from the usual trial protocol and have defendant preseated on the witness stand outside the presence of the jury. Thus, the use of the stun belt in this case necessitated the trial judge to treat defendant, upon his testifying, differently from the other witnesses who testified for the State at trial. Police officers Breen, Reid, Jensen, and Proschaska, in addition to auto yard owner Bill Clemmons, all walked up to the witness stand and were sworn in as witnesses in the presence of the jury, as is usually done in all criminal cases. Such things may mean little to those of us trained in the law, but jurors are not so trained and may well attach undue significance to such discrepancies. The disparate treatment of defendant from other witnesses who are not on trial

---

[4]It appears that electronic stun belts are not undetectable or invisible. In *United States v. Durham*, 287 F.2d 1297, 1305 (11th Cir. 2002), the court noted that the "belt protrudes some three inches from the wearer's back." In *State v. Flieger*, 91 Wash. App. 236, 242, 955 P.2d 872, 874 (1998), the electronic restraining device in use was so noticeable that it piqued jurors' curiosity about what the device was.

"might have a significant effect on the jury's feelings about the defendant" (see *Illinois v. Allen*, 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1061 (1970)) and may cause jurors to believe that the difference in treatment is somehow related to defendant's status as a defendant. Thus, the Eleventh Circuit Court of Appeals' acknowledgment, with respect to this facet of the due process inquiry, that "[t]he use of a stun belt as a security device undoubtedly raises some concern about possible prejudice to the defendant, and this is a concern that needs to be considered before the device is imposed on a defendant" (*Durham*, 287 F.3d at 1305) rings especially true in this case.[5]

Notwithstanding the above, the courts that have addressed this issue are more concerned with the electronic stun belt's potential to "disrupt a different set of a defendant's constitutionally guaranteed rights." *Durham*, 287 F.3d at 1305; see also *People v. Mar*, 28 Cal. 4th 1201,1227, 52 P.3d 95, 112, 124 Cal. Rptr. 2d 161, 181 (2002) (acknowledging that the use of an electronic stun belt posed a significant risk of impairing a defendant's ability to participate and assist in his or her defense); *Wrinkles*, 749 N.E.2d at 1194 (noting that the stun belt, even if not activated, has the "chilling effect" of "compromising the defense"). In order to adequately appreciate the concerns raised by these courts with respect to this set of rights, it is necessary to understand how the electronic stun belt works.

---

[5]The court accuses me of speculating about the effect that this discrepancy had on the jury. I note that the court indulges in speculation itself when it states that the discrepancy did not affect the jury. This misses the point. One should not have to resort to speculation to appreciate that what occurred at trial raised the *danger* of prejudice, which in restraint cases, is what courts are supposed to be guarding against.

In his brief, defendant reiterates the appellate court's finding that the belt worn by defendant was the same type of belt described in another case from the Third District of our appellate court. According to defendant, the belt, when activated, delivers a 50,000 volt shock to the wearer which lasts for approximately eight seconds. The shock would knock the wearer to the ground and would incapacitate the wearer for 45 minutes. At oral argument, however, the State maintained that defendant could not point to the description in the *Martinez* case to argue against the use of the belt in his own case. I find the State's argument particularly unpersuasive since the State does not deny defendant's description of the belt nor does it attempt to otherwise enlighten this court about the belt in any meaningful way. The State, in its brief, does not once describe the device used in this case, yet argues nonetheless that its use at this trial should not be considered prejudicial in any way. The State's *amicus*, the sheriff of Will County, represented by the State's Attorney of Will County, speaks of his interest in "preserving the ability to use a stun belt as a security measure at trial," but tells us little about the characteristics of the restraining device he advocates. The lack of such information from the sheriff is even more troubling since the record makes clear it was the Will County sheriff who insisted on the use of the electronic stun belt in this case.[6]

---

[6]The record reveals that when defendant's counsel raised the issue of removing the belt, the first person to respond was the court officer, who stated "No" before the trial judge could even speak. The sheriff's position on electronic stun belts was discussed in *People v. Martinez*, 347 Ill. App. 3d 1001 (2004), and I take judicial notice of the fact of the following, taken from the appellate court's decision in that case:

> "The [trial] court added that it would not 'tell the Sheriff how to run his jail.' The judge elaborated: '[Jail officials] tell me now that it is standard operating procedure, even if it's a [*sic*] 80-year-old lady who is in custody with the cuffs off and going to trial on a Class 4 Felony, it's [the stun belt] worn in court now. And I am not going to change the Sheriff's Department's policy.' " *Martinez*, 347 Ill. App. 3d at 1003.

I point out that the trial judge in *Martinez* was the same trial judge who presided over defendant's trial in this case. I note that the court, in today's opinion, refers to other cases arising from the Third District, and Will County in particular. Thus, it appears that the sheriff of Will County has

In any event, descriptions of the electronic belt can be readily found in opinions rendered in courts which have closely examined this issue. The following description is fairly representative:

> "As the Court of Appeal explained: 'Stun belts are used to guard against escape and to ensure courtroom safety. This device, manufactured by Stun-Tech, is known as the Remote Electronically Activated Control Technology (REACT) belt. The type of stun belt which is used while a prisoner is in the courtroom consists of four-inch-wide elastic band, which is worn underneath the prisoner's clothing. This band wraps around the prisoner's waist and is secured by a Velcro fastener. The belt is powered by two 9-volt batteries connected to prongs which are attached to the wearer over the left kidney region. ***
>
> 'The stun belt will deliver an eight-second, 50,000 volt electric shock if activated by a remote transmitter which is controlled by an attending officer. The shock contains enough amperage to immobilize a person temporarily and cause muscular weakness for approximately 30-45 minutes. The wearer is generally knocked to the ground by the shock and shakes uncontrollably. Activation may also cause immediate and uncontrolled defecation and urination, and the belt's metal prongs may leave welts on the wearer's skin requiring as long as six months to heal. An electrical jolt of this magnitude causes temporary debilitating pain and may cause some wearers to suffer heartbeat irregularities or seizures.'

established a general, blanket policy of restraining all felony prisoners with electronic stun belts without regard for particularized circumstances and clearly not on the case-by-case basis that this court required for imposition of restraints in *Boose* and *Staley*. The sheriff's actions in this regard appear to run afoul of the rule that it is the trial judge who traditionally exercises his or her discretion in maintaining order in the trial courtroom.

[Citation.]" *Mar*, 28 Cal. 4th at 1214-15, 52 P.3d at 103, 124 Cal. Rptr. 2d at 171.

See also *Wrinkles*, 749 N.E.2d at 1193 (reciting same general description). Given these characteristics, a number of courts have been concerned about the effect such devices can have on a defendant's ability to assist counsel and participate in the defense. For example, the Eleventh Circuit Court of Appeals was particularly troubled about the adverse impact the device can have on a defendant's sixth amendment and due process rights to be present at trial and participate in his defense:

> "Wearing a stun belt is a considerable impediment to a defendant's ability to follow the proceedings and take an active interest in the presentation of his case. It is reasonable to assume that much of a defendant's focus and attention when wearing one of these devices is occupied by anxiety over the possible triggering of the belt. A defendant is likely to concentrate on doing everything he can to prevent the belt from being activated, and is thus less likely to participate fully in his defense at trial. We have noted that the presence of shackles may 'significantly affect the trial strategy [the defendant] chooses to follow.' [Citation.] A stun belt is far more likely to have an impact on a defendant's trial strategy than are shackles, as a belt may interfere with the defendant's ability to direct his own defense." *Durham*, 287 F.3d at 1306.

Similarly, the Supreme Court of California has acknowledged that "it is by no means clear that the use of a stun belt upon any particular defendant will, as a general matter, be less debilitating or detrimental to the defendant's ability fully to participate in his or her defense" than would be the use of the more traditional methods of restraint, such as handcuffs or shackles. *Mar*, 28 Cal. 4th at 1226, 52 P.3d at 111, 124 Cal. Rptr. 2d at 181. On the contrary, the court warned that

> "[t]he psychological effect of wearing a device that at any moment can be activated remotely by a law enforcement officer (intentionally or accidentally), and that will result in a severe electrical shock that promises to be both injurious and humiliating, may vary greatly depending upon the personality and attitude of the particular defendant, and in many instances may impair the defendant's ability to think clearly,

concentrate on the testimony, communicate with counsel at trial, and maintain a positive demeanor before the jury." *Mar*, 28 Cal. 4th at 1226, 52 P.3d at 111, 124 Cal. Rptr. 2d at 181.

In this vein, the court was also deeply troubled by claims made in promotional literature from manufacturers of the belts that touted the belt's ability "to provide law enforcement with 'total psychological supremacy ... of potentially troubling prisoners.' " *Mar*, 28 Cal. 4th at 1226, 52 P. 3d at 111, 124 Cal. Rptr. 2d at 181. Other courts have voiced similar concerns. See *Hawkins v. Comparet-Cassani*, 33 F. Supp. 2d 1244, 1262 (C.D. Cal. 1999) (stating that "a defendant may be reluctant to object or question the logic of a ruling–matters that a defendant has every right to do"); *Wrinkles*, 749 N.E.2d at 1195-96 (acknowledging that psychological impact of belt on a defendant can compromise the defense).

Finally, I note that courts have found that stun belts possess "the potential to be highly detrimental to the dignified administration of criminal justice." *Durham*, 287 F.3d at 1306. For example, the California Supreme Court acknowledged a "disturbing number of accidental activations" of stun belts across the country. The court specifically pointed to accidental activations recorded in judicial opinions from Idaho, Nevada, Ohio, and California. *Mar*, 28 Cal. 4th at 1228, 52 P.3d at 112-13, 124 Cal. Rptr. 2d at 182-83 (collecting cases).[7] In the same opinion, the court expressed concern over the fact that the device can also be distracting, specifically referencing a quote from a stun belt use trainer that, "at trials, people notice that the defendant will be watching whoever has the monitor." *Mar*, 28 Cal. 4th at 1226-72, 52 P.3d at 111, 124 Cal. Rptr. 2d at 181. These examples demonstrate how this kind of device can be detrimental to dignified proceedings in a criminal trial.

In light of the foregoing, I believe that stun belts plainly raise many of the same constitutional concerns that this court recognized in

---

[7]During the State's presentation at oral argument, Justice Garman asked whether actions on the part of the defendant can "trigger" the belt. The assistant Attorney General answered that only the "deputy" holds the button, implying that there could not be any type of accidental activation. These recorded instances of accidental activation in other jurisdictions demonstrate that accidents do in fact occur.

*Boose* and *Staley*, though in somewhat different ways. Although a stun belt may be less visible than devices such as handcuffs or shackles, the belt imposes a more substantial burden on the ability of a defendant to participate in his own defense and to confer with counsel during trial than do other devices. The stun belt also poses a serious threat to courtroom decorum and dignity. Because of the importance of these rights to our criminal justice system, the unjustified use of an electronic stun belt should result in plain error. Given the psychological effects the stun belt has on its wearer, as identified by courts in other jurisdictions, I am unwilling to hold, as my colleagues do, that because of defendant's procedural default, defendant must establish prejudice with specific reference to the record in order to warrant relief on appeal. Such a holding is inconsistent with *Boose* and *Staley*, which do not require that specific prejudice be shown.

Moreover, I am puzzled by the court's holding that defendant here "has not shown that his presumption of innocence, ability to assist counsel, or the dignity of the proceedings was compromised." Slip op. at 10. How exactly is a defendant to show that his presumption of innocence was compromised? What type of record evidence would support a finding of a compromised presumption of innocence? It is ironic that it is I, writing in my dissent, who has demonstrated with actual citation to the record how the use of the stun belt in this case affected the normal procedure of this criminal trial, where the record reveals that defendant was preseated in the witness box outside the presence of the jury. My colleagues' response to the very type of record evidence that they demand throughout their opinion is that I am speculating about what kind of effect that had on the jury. Slip op. at 14. I sincerely hope that my colleagues are not insinuating that an activation of the stun belt must occur before a defendant's presumption of innocence will be deemed "compromised." The court intimates that, because defendant "was before the jury for two days" with "no objection" and without "any apparent difficulty consulting with his counsel," all was fine. As a reviewing court, we are left with a cold transcript of the proceedings from which we are unable to glean nuances in tone, demeanor, and appearance. That, of course, is why we defer to findings made by the trier of fact who, having been present at the trial, is in a better position to assess these particular things. For these reasons, I am unwilling to assume, as my colleagues

appear to, that because the record does not reflect any overt signs of nervousness or distress on defendant's part over the use of the belt, defendant did not experience any anxiety or suffer any prejudice. All people react to stress differently. The record may not reflect anxiety on a defendant's part because he or she may not manifest anxiety in an outwardly discernable manner, *e.g.*, nervous twitching, stuttering, shaking, and the like. Instead, a defendant may be the type of individual who internalizes anxiety in ways that are not visible to observers. Similarly, a defendant's lack of outcry to the trial judge or his counsel does not necessarily establish a comfort level with the stun belt or acquiescence in its use. Rather, such a defendant may be afraid of saying anything to anyone, lest an objection lead to activation of the stun belt.

The court's resolution of this matter reveals that it has overlooked the most glaring problem that occurs when a stun belt is placed upon a criminal defendant without a showing a manifest need. A defendant has the right to be free from restraint at trial because, as courts have long recognized, restraints unduly erode the trial protections afforded to a defendant by the Constitution. It is only when a defendant misbehaves or poses a great danger through past behavior that those trial protections are rightfully diminished. Such a defendant's trial protections are less, but that is constitutionally permissible because just cause has been shown. The unjustified imposition upon a criminal defendant of a remote-controlled electronic restraint–a device which is designed to give "psychological supremacy" over its wearer to the person who holds its activation button–poses a "severe threat" to the fairness of the proceedings. This results in a benefit to the prosecution because the defendant unjustifiably enjoys lesser trial protections through no fault of his own. It is the prosecution, not the defense, which benefits when a defendant, without just cause, is–for a lack of better description–psychologically neutralized, *e.g.*, his attention focused on the stun belt and not the trial, his demeanor affected by trying not to be shocked, and the like. Such a defendant stands at a disadvantage at trial, and the proceedings become tainted. This is precisely the kind of error that the second prong of the plain-error rule seeks to guard against. It is the type of error that "erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial." See *Herron*, 215 Ill. 2d at 186. For these reasons, I believe that the second prong of the plain-error rule has

been satisfied in this case.

Frankly and with all due respect, I have difficulty understanding the court's treatment of defendant's argument in this case. The court stresses often in its opinion that it is not "address[ing] the propriety of using stun belts at a criminal trial" and that the "use of such restraints in Illinois courts *** is not raised in this case." Slip op. at 10. However, that issue is clearly and necessarily raised in this case. Defendant argues that the use of electronic stun belts is so inherently prejudicial that it served to undermine the basic trial rights he has been afforded under our Constitution. On some level, the court must be concerned with the use of electronic stun belts because it does indeed hold that to restrain a defendant with such a device without first determining whether the *Boose* test is met violates due process. The court holds that *Boose* and *Staley* apply with equal force in electronic stun belt restraint cases. I point out that *Boose* and *Staley* allow for restraints to be used in cases where manifest need has been established on the record. Therefore, if *Boose* and *Staley* apply with equal force to stun belt restraints, as the court holds, then, *ipso facto*, electronic stun belts can be used in Illinois courtrooms consistent with the teachings of *Boose* and *Staley*. Given this ruling, I simply do not understand why the court states that today's opinion does not address the use of stun belts at a criminal trial. I have similar difficulties understanding the court's holding that putting a defendant in a restraint like the one at issue here, without first establishing just cause, constitutes a violation of due process. Why does the court rule in this manner? According to our opinions in *Boose* and *Staley*, the main concern the courts had was on the magnitude of the error to the proceedings on a whole and not on any actual prejudice to a defendant. It was that concern which prompted those courts to hold that the error violated due process. None of the defendants in *Boose* or *Staley* pointed to specific instances in the record where the presumption of innocence, the right to participate and assist at trial and the right to a dignified proceeding were actually compromised. Instead, it was this court that was concerned with the *effect* the unjustified use of the restraints would have on the integrity of the judicial proceedings because the restraints had the potential to compromise those important trial rights. Nevertheless, today's opinion, while stating that a due process violation occurred here, demands actual proof of an impact on those rights even though, in our

earlier cases, the due process violation was not predicated upon a finding of actual prejudice. Defendant's procedural default does not lessen the due process violation since that violation, under *Boose* and *Staley*, is not dependent on actual prejudice.[8]

The court's opinion also appears to be inconsistent. At the outset of its analysis, the court states that although the trial court never referred to the "security device" as an "electronic stun belt," it, like the appellate court below, is "confident" in its assessment that "it was indeed that type of restraining device." Slip op. at 3. The court then states that its finding is "especially probable" because in another recent Will County circuit court case, *People v. Martinez*, the State asked the appellate court to validate the "Will County Sheriff department's 'standard operating procedure of requiring all felony defendants to wear a stun belt while appearing in court.' " Slip op. at 3. The court also cites to other cases currently pending before this court involving the use of stun belts in Will County. Thus, it appears that, from that point of its opinion on, the court is operating under the assumption that electronic stun belts are at issue in this case. The court cites to a number of cases from outside of our jurisdiction which hold that electronic stun belts are restraining devices, the use of which is subject to the same restrictions as shackles. Slip op. at 5.

---

[8]The court's treatment of this issue indicates that but for counsel's failure to include the matter in defendant's posttrial motion, defendant's challenge to the use of the stun belt would have been resolved differently. See slip op. at 16 (noting *Boose*, *Staley*, *Martinez*, and *Deck* all present a "different factual situation which allows for a *per se* finding of reversible error which is not applicable under the facts presented in this case"). In light of this, defendant may have a constitutional claim of ineffective assistance of trial counsel cognizable under our Post-Conviction Hearing Act.

The court further holds that, in this case, the trial court's failure to follow the procedures set forth in *Boose* before ordering that defendant continue to wear an electronic stun belts constituted a due process violation. Slip op. at 7. Notwithstanding all of the above, the court faults me for my use of "information outside the record and cases outside our jurisdiction to speculate as to the type and effect of the stun belt worn in this case and to proselytize for a ban on the use of stun belts in Illinois." Slip op. at 12. Clearly, the court has misapprehended my dissent as much as it has misapprehended the reasoning behind *Boose* and *Staley*. Nowhere in this dissent do I "proselytize for a ban on the use of stun belts" as the court erroneously charges. As stated below, I believe that stun belts can be used in our courtrooms at the discretion of our trial judges after application of the factors identified in *Boose* and additional factors associated with the unique nature of this particular restraining device. The court then states that "there is nothing of record to show that the type of electronic device worn in the nonprecedential cases cited by the dissent are in any way similar to the device worn by defendant." Slip op. at 12. If the court is, in fact, concerned with this defendant's lack of establishing on the record the specific type of electronic stun belt that is at issue in this case, then I do not understand why the court accepted the speculation of the appellate court that the security device was an electronic stun belt in the first place. Why does the court look to "nonprecedential" Third District appellate court cases in order to determine the standard operating procedure of the Will County sheriff? Taking the court at its own word, I do not understand why the court takes note of the actions of the Will County sheriff in this case, but then does not take note of the actions of other Will County defendants. If the actions of the other Will County defendants are of no moment in this case, then the actions taken by the Will County sheriff in other cases should likewise be of no moment in this case. I do not understand the basis on which the court decides what facts outside the record can be relied upon in this case and what facts outside the record cannot be relied upon. I also have similar difficulties understanding why, if my colleagues are so troubled by the fact that the type of electronic restraint involved in this case is "not even known," they would issue an opinion which establishes as precedent that electronic stun belts are devices that are the equivalent of physical restraints and must comply with *Boose*. How can the

court rule that such a restraint is the equivalent of something else if the court does not take the time to understand how the device works and refuses to look to other opinions from other jurisdictions which have set forth this necessary information? In my view, it is appropriate and, indeed necessary, to look to other cases to understand what these devices are and how they work in order to address defendant's argument that the use of these restraints compromised his trial such that the second prong of the plain error test is satisfied. The court's criticism of my use of cases from outside the jurisdiction (some of which the court itself cites in the body of its opinion) in order to assess defendant's plain error argument is simply not justified.

III

Despite its holding that a trial court must follow the procedures set forth in *Boose* before ordering that defendant continue to wear an electronic stun belt at trial and the failure to do so results in a due process violation, the court believes that its opinion does not have the effect of countenancing the continued use of stun belts in Will County or any other county in this state. See slip op. at 6. I do not believe that the court's opinion will be read in the narrow manner it believes, especially when the unjustified use of the stun belt in this case is deemed inconsequential by a majority of this court. However, the use of such devices raises significant questions that generally have not been considered by trial courts when addressing the more traditional forms of trial restraints. Today's opinion fails to consider these questions as well, despite its recognition that the *Boose* factors apply to stun belts. I note that the court does not acknowledge the potential health risks that are associated with the use of stun belts. The California Supreme Court has noted that

> "the manufacturer of the REACT stun belt and regular users of the device apparently recognize that the stun belt poses special danger when utilized on persons with particular medical conditions, such as serious heart problems." *Mar*, 28 Cal. 4th at 1229, 93 P.3d at 113, 124 Cal. Rptr. 2d at 183.

The court also pointed to a statement from the assistant director of the Federal Bureau of Prisons, which instituted a policy not to use stun belts on (i) pregnant female inmates, (ii) inmates with heart disease,

(iii) inmates with multiple sclerosis, (iv) inmates with muscular dystrophy, and (v) inmates who are epileptic. *Mar*, 28 Cal. 4th at 1229, 93 P.3d at 113, 124 Cal. Rptr. 2d at 183. Based on these facts, the court warned "when the risk of accidental activation is considered, use of stun belt without adequate medical precautions is clearly unacceptable." *Mar*, 28 Cal. 4th at 1229, 93 P.3d at 113, 124 Cal. Rptr. 2d at 183. I share these concerns.

Finally, today's opinion fails to acknowledge the importance of adequate training for those officers of the court who control the device at trial. This is especially necessary in view of the stun belt's troubling potential for accidental activation. I believe that the trial court should make an inquiry concerning the amount of training the officer in charge of the activation button has received before allowing the device to be used in the courtroom.

In light of the concerns regarding health risks and accidental activations, I agree with those courts that hold that "if a stun belt is to be used to restrain a particular defendant, a court must subject that decision to careful scrutiny. This scrutiny should include addressing factual questions related to its operation, the exploration of alternative, less problematic methods of restraint, and a finding that the device is necessary in that particular case for a set of reasons that can be articulated on the record." *Durham*, 287 F.3d at 1309. See also *Mar*, 28 Cal. 4th at 1230, 52 P.3d at 113-14, 124 Cal. Rptr. 2d at 183-84 (holding that trial court can approve use of stun belt only after traditional restraint factors are met, the belt is the least restrictive device that will serve the court's security interest and only upon determination that the use of the belt is safe and appropriate under the particular circumstances). Consistent with today's application of the *Boose* factors to cases involving electronic stun belt restraining devices, I would also require that the any trial judge who employs the use of electronic stun belt restraining devices in his courtroom make specific findings on the record with respect to the defendant's medical history and the training given to the deputies before allowing such a method of restraint to be used. Given this position, I fail to see how the court can accuse of me of using this dissent "to proselytize for a ban on the use of stun belts in Illinois." Slip op. at 12.

IV

As the foregoing demonstrates, I disagree strongly with the court's treatment of this issue of first impression. The opinion demonstrates that a majority of the court fails to appreciate the significant and profound impact that this relatively new means of restraint has a defendant's trial rights. I respectfully dissent.

JUSTICES McMORROW and KILBRIDE join in this dissent.