2024 IL App (2d) 230385-U
No. 2-23-0385
Order filed January 18, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-CF-942 |
| | ) | |
| JEFFREY A. SVOBODA, | ) | Honorable |
| | ) | Michael Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok concurred in the judgment.
Justice Kennedy dissented.

**ORDER**

¶ 1   *Held*:   The circuit court did not abuse its discretion in denying defendant's pretrial release for a Class X felony drug offense; defendant was a danger to the community and no less restrictive conditions would ensure the community's safety.

¶ 2   Defendant, Jeffrey A. Svoboda, appeals from the circuit court's orders detaining him prior to trial, pursuant to amendments to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), also known as the "Safety, Accountability, Fairness and Equity-Today" (SAFE-T) Act or the "Pretrial Fairness Act" (the Act). See Pub. Acts 101-652, § 10-255,

102-1104, § 70 (eff. Jan. 1, 2023). Defendant contends that the State's proffered evidence was insufficient to warrant his pretrial detention. We affirm.

¶ 3                                              I. BACKGROUND

¶ 4      Under the Act, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (West 2022). In certain limited circumstances, however, the court may detain the defendant either because he poses a real and present threat to the safety of any person or persons or the community or has a high likelihood of willful flight to avoid prosecution. 725 ILCS 5/110-6.1(a) (West 2022). To overcome the presumption that the defendant will be released, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* § 110-6.1(e). Here, the State filed a verified petition to deny defendant's release under the dangerousness standard, *i.e.*, on the basis that he "poses a real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(a)(1) (West 2022).

¶ 5      We take our preliminary information from the supplemental record before us. According to the State, on October 2, 2023, defendant was pulled over in his Ford Escape due to an expired registration sticker. It appears that at the time of stop, defendant was the target of an ongoing narcotics investigation by the McHenry County Sheriff's Office. We note that the State filed a rather laconic "probable cause" statement written by the police, which states that A "probable cause" search of defendant's vehicle yielded 44 grams of cocaine in two packages. One package

was mostly powder cocaine, while the other was crack cocaine. Inside defendant's car, police also found a digital scale, glass smoking pipes, "approximately 1 gram of an unknown brown powdery substance," and around $1,100 cash.

¶ 6    Defendant was charged by complaint with manufacture or delivery of between 15 and 100 grams of cocaine (720 ILCS 570/401(a)(2)(A) (West 2022)), possession of between 15 and 100 grams of cocaine (*id*. § 402(a)(2)(A)), and possession of drug paraphernalia (*id*. § 600/3.5(a)). The most serious offense, the manufacture/delivery charge, is a non-probationable, Class X felony.

¶ 7    Defendant's pretrial services report indicates that defendant is 57. He has no criminal history, no employment, and, when asked, defendant denied any personal substance abuse issues or a need for treatment. At the pretrial release hearing, the State asserted that defendant was an active narcotics trafficker and that the amount of the cocaine in defendant's car, and how it was packaged, shows that he is part of the stream of commerce of dangerous drugs. The defense countered that defendant has no prior criminal history and attempted to rebut the State's position by suggesting defendant could be placed on "supervision or some sort of monitoring."

¶ 8    The circuit court was not persuaded that defendant was not dangerous or that conditions could protect the community. In particular, the court noted that defendant stated he was unemployed, but had cash in his possession along with thousands of dollars' worth of cocaine. The court said that while it was not assessing defendant's guilt, it appeared that defendant's only source of income was from drug sales and that no conditions, such as electronic home monitoring, could prevent him from reengaging in that occupation. Accordingly, the court entered a written order denying defendant's pretrial release.

¶ 9                                    II. ANALYSIS

¶ 10    Defendant appeals and we affirm. We review the trial court's ultimate determination of pretrial release for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. In so doing, we are mindful that the question is not whether we would have made the same decision in the first place. "Rather, the question is whether the [circuit] court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Citations and quotation marks omitted) *People v. Peterson*, 2017 IL 120331, ¶ 125.

¶ 11    On appeal, defendant asserts that the Act only permits detention when there is a "a risk of *violent* criminal acts." (Emphasis in original.) This argument was never raised in the circuit court below, but forfeiture aside, we also do not accept the premise. Had the legislature sought to narrow the class of detainable offenses to traditionally violent crimes, or to exclude narcotics cases altogether, it easily could have done so. Instead, having been charged with a significant non-probationable Class X felony, defendant was categorically subject to pretrial detention under the plain language of the Act. See 725 ILCS 5/110-6.1(a), (e) (West 2022). Defendant's argument also casually deprecates the significant harms caused by and associated with drug trafficking.

¶ 12    But more to the point, this *was* a detainable offense, and as the circuit court found, the proof was evident that defendant had committed that offense. As the court noted:

"[The State] has made reference to the fact that you had a large quantity of United States currency on your person or accessible to you and yet you've told me this afternoon that you have not been employed in any meaningful or substantial way, which creates a reasonable question about the source of that income. And it is certainly not unreasonable to infer that its genesis came from the sale of the cocaine or cocaine or other controlled substances. Having considered all of those matters, your pretrial history, the proffer, the argument of the attorneys, I do find that granting the [S]tate's petition for pretrial

detention is appropriate.

[* * *]

I am going to find under the dangerous standard that the proof is eviden[t] or the presumption is great that you committed the detainable offense of unlawful delivery of a controlled substance.

I do believe that your release poses a real and present threat to the safety of the community. And contrary to [defense counsel's] argument, I do find that there are currently no conditions or combinations of conditions that would mitigate against the real and present threat to the community."

On balance, we cannot say that no reasonable person would agree with the circuit court's findings on dangerousness and the unsuitability of less-restrictive pretrial release conditions to address those concerns. Moreover, we agree with the circuit court that defense counsel's vague suggestion of "some sort of monitoring" was plainly insufficient to prevent defendant from further engaging in unlawful narcotics trafficking or to ensure the community's safety if he were released prior to trial. In sum, we cannot say that the circuit court's resolution of these issues was unreasonable or contrary to the evidence.

¶ 13    Defendant's memorandum also suggests that the search of his car was impermissible, explaining that police are required by statute to "issue a citation in lieu of custodial arrest" for his expired registration, as defendant (allegedly) provided police with a valid driver's license. See 725 ILCS 5/109-1(a-1) (West 2022). This argument, too, was never made in the circuit court, but it is also conceptually mistaken. Defendant was likely not *arrested for* having an expired registration sticker; rather it appears he was arrested for the three charged drug crimes, which is altogether different from having been initially, and lawfully, *detained* for an investigative stop based on an

expired tag. See *Whren v. United States*, 517 U.S. 806, 809-10 (1996). While we do not doubt that questions regarding the validity of a given search or seizure *can* be relevant at a pretrial release hearing, defendant has not persuaded us that they are relevant *in this case*, let alone that there was any violation of his right to be free from unlawful search or seizure.

¶ 14    In addressing the dissent, we are mindful that dealing narcotics, while not perhaps inherently dangerous as a personal activity, is nevertheless dangerous to the community and has been criminalized as a result. In addition, perhaps a more detailed record could have been made regarding each of the factors identified in the statute, although the Act does not require circuit courts to opine on each statutory factor and the weight it attributes to each factor. Reviewing courts have held that these cases are not reviewed *de novo*, but for an abuse of discretion, and that reflects the reality that pretrial matters are committed to the circuit court's considerable discretion.

¶ 15                                    III. CONCLUSION

¶ 16    Because we cannot say that the circuit court's decision was unreasonable, we affirm the judgment of the circuit court of McHenry County.

¶ 17    Affirmed.

¶ 18    JUSTICE KENNEDY, dissenting.

¶ 19    The majority today upholds a pretrial detention order that was entered without any specific articulable facts to support a finding that defendant was a real and present threat to the safety of the community. Rather than hold the trial court to the plain language of the statute, the majority's holding instead endorses a *per se* approach to dangerousness under the SAFE-T Act that stands in direct contravention of the plain language of the statute. I therefore respectfully dissent.

¶ 20    Under the Act, a defendant charged with a non-probationable (and non-forcible) felony offense may be detained if, *inter alia*, his "pretrial release poses a real and present threat to the

safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1). In determining whether a defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, [the court may] consider, but shall not be limited to, evidence or testimony concerning" nine factors. *Id.* § 110-6.1(g). The "dangerousness"[1] factors are as follows:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

---

[1] The heading to this subparagraph of the Act is "Factors to be considered in making a determination of dangerousness," thus the term "dangerousness" is commonly used to describe this analysis, becoming shorthand for the "real and present threat to the safety" language in the text of the Act's detention section. See, *e.g.*, *People v. Horne*, 2023 IL App (2d) 230382, ¶ 11, 19, 27; *People v. Martin*, 2023 IL App (4th) 230826, ¶ 7, 11.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

The Act further specifies that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7) (adding that risk assessment tools may not be used as the sole basis to deny pretrial release).

¶ 21    In this case, the State's proffer consisted of a synopsis stating that defendant was stopped for an expired vehicle registration and found in possession of 44 grams of cocaine, a scale, pipes, and $1084 in U.S. currency (at a time he was not employed). Clearly, proof was evident that defendant committed a detainable offense, satisfying the first prong of the pretrial detention analysis under the Act. However, the State failed to present any evidence as to the other two prongs required to support a pretrial detention determination. I believe the trial court abused its discretion by failing to follow the unambiguous language of the statute and by making its detention determination in the absence of any evidence to support its finding of dangerousness or its finding that no conditions of release could mitigate any threat posed by defendant.

¶ 22    At the detention hearing, the State presented no evidence whatsoever that this particular defendant was dangerous as required under the Act. To the contrary, the pretrial risk assessment described a 56-year-old with no prior criminal history and a risk score of 4 (out of 14), equating to a recommended pretrial supervision level of 2 (out of 6), with recommended release conditions such as pretrial supervision with GPS or other electronic monitoring. The State articulated no facts specific to this defendant's dangerousness, instead making only the following vague and general assertion: "There is a threat to the community in the dealing of narcotics *** [a]s well as the trickle-down effect that drug dealing causes in the destruction of families and the destruction of this community that we live in."[2]

---

[2] The majority characterizes the State's argument as asserting that "defendant was an active narcotics trafficker and [] the amount of the cocaine in defendant's car, and how it was packaged, shows that he is part of the stream of commerce of dangerous drugs." These rhetorical flourishes

¶ 23     However, the statute requires that courts base findings of dangerousness on more than the general nature of the charge itself and further requires that such danger be "real and present." While there can be no doubt that the sale of cocaine is inherently dangerous to any community in many ways, both direct and indirect, that general danger is the primary reason why selling cocaine is illegal. It is also why, based on the amounts involved, these crimes can be punishable by non-probationable prison terms, additionally subjecting those so charged to possible pretrial detention. But, while these--and many other--crimes implicitly entail some level of dangerousness, such a general consideration is not the sole statutory basis by which our courts may determine whether defendants accused of such crimes are eligible for release while their case is pending. Instead, the Act requires clear and convincing proof of specific articulable facts of the case, not generalities about the nature of criminal charges or categories thereof or their effects on society.

¶ 24     The trial court completely ignored the statute's requirements, considering none of the statutory factors concerning dangerousness on the record, articulating no specific facts supporting a finding of dangerousness, and making no individualized findings in support of its determination that no release conditions could mitigate safety threats. Instead, the court simply stated bare conclusions, such as "I do believe that your release poses a real and present threat to the safety of the community" and "I do find that there are currently no conditions or combinations of conditions that would mitigate against the real and present threat to the community." No reference was made to any specific fact concerning defendant's dangerousness or any statutory factor. Instead, the court confused the second prong's dangerousness standard with the first prong's standard for detainable

_____

are not contained in the record. The State's more prosaic assertion at the hearing was merely to conflate any drug dealing with dangerousness under the Act.

offenses: "I am going to find under the dangerous standard that the proof is evident or the presumption great that you committed the detainable offense of unlawful delivery of a controlled substance."

¶ 25    In a detention order, the trial court is required to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***." 725 ILCS 5/110-6.1(h)(1). Here, the court's detention order made only the following finding in support of pretrial detention:

> "The quantity of controlled substance and the facts set forth in the probable cause statement support detention. The quantity of the substance demonstrates that there are no conditions that protect the public if the defendant was released. Defendant possessed a large amount of cash at arrest suggesting by reasonable inference drug delivery activities."

¶ 26    To be clear: the quantity of cocaine, cash, and paraphernalia found certainly supported the finding that defendant committed a detainable offense. But, while these facts (all told: 44 grams of cocaine, $1084 in cash, a scale and pipes) support a first prong finding of a detainable offense, that is all these facts support. No weapons were found, no criminal or violent or abusive or threatening history was presented, and no other section 110-6.1(g) factors weighed in favor of a finding that this defendant posed a threat to the safety of any person or the community. Indeed, the court considered none of the statutory factors on the record; but, if it had, it could have found only that none of them supported a finding of this defendant's dangerousness. The trial court (and now the majority here) simply deemed the charge of Class X possession of controlled substance with intent to deliver to constitute not only clear and convincing proof of dangerousness but also proof

that no condition of pretrial release could possibly mitigate the unspecified threat. This is not consistent with the Act.

¶ 27    The majority's approach renders much of the relevant language of the Act utterly meaningless. See *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14 (when interpreting a statute, no part of the statute should be rendered meaningless or superfluous); *People v. Taber*, 2023 IL App (2d) 220288, ¶ 24 (same). If the legislature had wanted to declare that certain crimes were so inherently dangerous that defendants charged with those crimes were to be automatically detained, they could have done so. To the contrary, the language of the Act specifically requires presumptions that all defendants, regardless of what they are charged with, are eligible for pretrial release (720 ILCS 5/110-2(a), 110-6.1(e) (West 2022)) and further requires that the Act be liberally construed to effectuate its stated goals (*id.* § 110-2(e)). Instead of effectuating the statute, the majority expands the dangerousness exception to the point where it swallows the rule.

¶ 28    Even if there was a factual basis for the trial court to have found that the State had proved defendant was a real and present threat, the court was then required to determine whether any pretrial release conditions "will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). If the trial court denies pretrial release to a defendant, "the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person of the community, based on the specific articulable facts of the case." *People v. Horne*, 2023 IL App (2d) 230382, ¶ 18. The trial court here made no such findings.

¶ 29    Further, the majority, in criticizing defense counsel's "vague suggestion of 'some sort of monitoring' [] as plainly insufficient," improperly shifts the burden of proof. The Act states that

the State, not the defendant, "shall bear the burden of proving by clear and convincing evidence that *** that no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***." 725 ILCS 5/110-6.1 (e)(3) (West 2022). Thus, it is not the burden of a defendant to propose conditions of release, but the State's. See also *id.* § 110-2(b) ("At all pretrial hearings, the prosecution shall have the burden to prove by clear and convincing evidence that any condition of release is necessary."). Additionally, it is the trial court's duty to examine and consider the conditions listed in the Act. See *id.* § 110-10(b). This was not done here.

¶ 30    In sum, I would reverse and remand for a hearing to determine conditions consistent with the Act. See *id.* 110-5, 110-10.