NOTICE
Decision filed 01/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240513-U

NO. 5-24-0513

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-1572 |
| | ) | |
| ERION V. DAVIS-MURDOCK, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Barberis and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant failed to object to being placed in restraints during his trial, the issue was forfeited on appeal. Where defendant failed to establish he had been denied a fair trial and did not argue that the evidence was closely balanced, he was not entitled to plain error review of the forfeited issue. Where there was no prejudice caused by counsel's failure to object to the restraints, there was no ineffective assistance of counsel.

¶ 2    Defendant, Erion V. Davis-Murdock, appeals his conviction following a jury trial on the grounds that (1) the trial court committed reversible error when it failed to conduct a *Boose* hearing (see *People v. Boose*, 66 Ill. 2d 261 (1977)) prior to allowing his ankle restraints to remain on during his jury trial and (2) if the issue is forfeited on appeal due to a failure to preserve the issue, his trial counsel was ineffective for failing to object to the use of such restraints and he should receive a second-prong plain error review of the issue.

1

¶ 3                                    I. BACKGROUND

¶ 4     We limit our recitation of the facts to those necessary for the disposition of the case before us on appeal. On December 22, 2021, defendant was charged by information with the offense of first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(1) (West 2020)) for the December 20, 2021, murder of Trenton Jones. On September 18, 2023, the case proceeded to a trial by jury.

¶ 5     On September 19, 2023, the second day of the jury trial, the defendant's ex-girlfriend, Shaniquh Johns, was called to testify before the jury. The State began by questioning Johns about the nature of her involvement in the case, including how she had also been charged with first degree murder in the case as a codefendant, but had negotiated a plea to conspiracy to commit armed robbery in exchange for her testimony in the proceedings against the defendant. During her testimony, the following exchange occurred:

> "MR. LOZAR [(ASSISTANT STATE'S ATTORNEY)]: Okay. Was there any conversation from the defendant, Mr. Davis-Murdock? What was he talking about?
> SHANIQUH JOHNS [(WITNESS)]: At first he was saying that he needs some money, and I told him to get a job. And then—
> Q. Then did anybody bring up any ideas about making money, specifically the defendant?
> THE DEFENDANT: I'm going to dead for (phonetic).
> [WITNESS]: Erion, Erion told me that—
> [ASSISTANT STATE'S ATTORNEY]: Judge, I'm going to ask the witness to stop for just a second.
> THE COURT: Hold on. Excuse me.
> THE DEFENDANT: And in spite of all of—
> THE COURT: Sir, sir, you need—
> THE DEFENDANT: —that in deep, and all that, this is my life, bro.
> THE COURT: —to not interrupt the testimony. Do you need a break, Ms. Patton, to talk to your client?
> MS. PATTON [(DEFENSE COUNSEL)]: Judge—
> THE DEFENDANT: I'm going to leave, spiteful ass bitch, bro.
> [DEFENSE COUNSEL]: Yes, please.
> THE DEFENDANT: I'm gonna throw them crap, bro. I'll ask, crazy ass broke—
> [DEFENSE COUNSEL]: Stop.

THE COURT: Sir, please stop right now, okay? We're going to take a break and you can discuss things with your attorney. It's almost noon. Since we're going to take a break, why don't we just take the lunch break.

Ladies and gentlemen of the jury, it is still not time to form opinions. Don't do any research, don't discuss the case. I'll let you go out for lunch. Please return, ready to go by 1:30, and we'll resume with this witness's testimony at that time.

(Jury excused and leaves the courtroom.)

THE DEFENDANT: She's lying. This bitch lying. This shit ain't real.

[DEFENSE COUNSEL]: Stop it.

THE DEFENDANT: Cause this bitch is lying, bro. Man, cause that bitch just bold-face lying.

THE COURT: Please be seated.

\* \* \*

[ASSISTANT STATE'S ATTORNEY]: Judge, I'd like to make a record before we go, if that's all right.

THE COURT: Okay. That's fine. We'll let Ms. Johns go.

[ASSISTANT STATE'S ATTORNEY]: In the absence of the jury and of the witness who was on the stand, Judge, I'd like to make the following record. During Ms. Johns' testimony the defendant began making such noise, and I couldn't make out specific words, but it was loud grumbling, grumbling and mutterings. I heard him—I heard him say that this was, I think he said—well, he—he said very clearly and certainly so the jury could have heard it, since I did, that she was lying. He made a significant disruption that I could not hear the witness's testimony. I will subjectively express to the court, she is already under a tremendous degree of stress, and his actions, quite frankly, border on tampering and intimidating her.

THE DEFENDANT: Can you take me out that, door? Bro, you all ass set up, telling motherfucking lies. Take me out that door.

THE COURT: Mr. Davis.

THE DEFENDANT: Yeah, bro.

THE COURT: Mr. Davis.

THE DEFENDANT: This—this a fixed-ass trial, bro.

THE COURT: Mr. Davis, do you want to have a contempt charge on top of, which will be consecutive to anything that might happen as a result of this trial? Then you need to be quiet until and unless it's your turn to talk. I'm sorry, Mr. Lozar, go ahead.

[ASSISTANT STATE'S ATTORNEY]: I wanted the record first to reflect that the break in testimony was to accommodate the fact the defendant was disrupting the courtroom, not at a disadvantage to him because of the break.

Also, quite importantly in my mind, I think, and I think the court has somewhat done it at this point. He has a right to be present during his trial. He does not, of course, from the State's point of view, have the right to disrupt or prevent the legal pursuit of justice here. I would like the court to advise him that if he maintains that type of conduct he is in danger of forfeiting his right to be present for the testimony of at least this witness. I understand that's a very difficult thing for the court to do. I am not asking that occur right now, but I'm very concerned about his behavior. Thank you.

THE COURT: All right, thank you. Ms. Patton, do you wish to add anything?

3

[DEFENSE COUNSEL]: Judge, I would just add that I had—during the disruption obviously I attempted to quiet my client down a bit/ we have agreed to take the break at—basically to allow my client time to calm down. I have also explained to him that he can very well be ordered not to be present during this trial, and his presence is more important than his disruption that's happening again.

THE COURT: All right. Mr. Davis-Murdock, as you've heard each of the attorneys mention, you do have an absolute right to be present for your trial, but you can forfeit that right by disrupting the trial. If you persist in having outbursts during the testimony of this witness or any other witness, you very well may find yourself outside of the courtroom while your case is being tried and decided. Do you understand that obligation to not disrupt the court proceedings?

THE DEFENDANT: Yeah.

THE COURT: All right. We'll show defendant has been admonished about the potential forfeiture of right to be present, indicates he understands the same. Anything else before we recess?

\* \* \*

All right. We are in recess.

THE DEFENDANT: Bro, take me out. Fixed-ass trial. You got to talk to her, clown-ass bitch. You can take me out like this. That bitch is lying. Playing the motherfucking lies. Take me back to the county, bro. Fuck this trial. Fucking broke-ass bitch, talking about me.

(Noon recess declared.)"

¶ 6    Following the noon recess, the court reconvened and went back on the record. Before the jury was brought back into the courtroom, the following exchange took place:

"[DEFENSE COUNSEL]: And then, Judge, the final thing is, my client, due to the incident that occurred prior to the break, jail staff has informed me that they have him in leg restraints still. I don't know if that needs to be addressed. I—I don't think they can be seen by the jury, and I don't know that they're going to cause any issue.

THE COURT: Okay. Mr. Lozar, do you want to add anything to that for the record purposes?

[ASSISTANT STATE'S ATTORNEY]: For the record, Judge, I'd note that the tables where counsel and I are sitting at are virtually identical, and the boards surrounding on the table on three sides goes all the way to the floor, so that on counsel's table especially you cannot see anything below the chest level. You certainly can't see the defendant's feet, or shackles. And from the jury's point of view there is no difference in the way he appears, I think, than the way he showed this morning and throughout the trial so far.

THE COURT: Okay.

[ASSISTANT STATE'S ATTORNEY]: Obviously I think it's in the court's discretion to do what the court wants to do at this point, but for the record I'd like that to be clear.

THE COURT: All right, thank you. We'll leave it that way for now. Do you want to retrieve your witness and we'll get her back on the stand and then get the jury back in?

4

[DEFENSE COUNSEL]: Judge, are you okay if my clients and I both remain seated when the jury comes in?

THE COURT: Yeah, that's fine.

[DEFENSE COUNSEL]: Thank you.

(Witness Shaniquh Johns resumes the witness stand.)"

Ms. Johns then proceeded to finish her testimony, and the case proceeded through the remainder of the trial.

¶ 7　　On September 21, 2023, the jury returned a verdict of guilty on the charge of first degree murder. After the trial, the defendant filed a *pro se* motion for a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), alleging that his counsel was ineffective. Defendant's trial counsel meanwhile filed a motion for a new trial arguing that the State failed to meet its burden of proof on all elements. Neither of these motions addressed the defendant being placed in physical restraints during his trial. A hearing on both motions was held on January 26, 2024, during which the defendant's restraint during the trial was not raised or addressed. Both the request for appointment of new counsel and the request for a new trial were denied by the trial court. On April 4, 2024, the defendant was sentenced to 52 years in the Illinois Department of Corrections. Defendant now appeals his conviction.

¶ 8　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 9　　On appeal, the defendant argues that he was denied a fair trial because, after his outburst during the testimony of Shaniquh Johns, his legs were placed in shackles for the remainder of the trial and he was not provided with a hearing prior to doing so, as required by *People v. Boose*, 66 Ill. 2d 261 (1977). In support of this argument, he raises two contentions. First, the failure to conduct a *Boose* hearing before shackling him during his trial violated his due process rights, and he should be granted a new trial. Second, if the violation of his rights was not properly preserved

for appeal, it should still be considered under the plain error doctrine because his counsel was ineffective in preserving the issue, and he should be given a new trial.

¶ 10   We begin our analysis of defendant's contentions by noting that, as the Illinois Supreme Court stated in *People v. Boose*:

> "A defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial. [Citations.] The determination is left to the discretion of the trial judge, and he may select the physical restraints most suitable in light of all the circumstances. [Citation.] The trial judge should state for the record his reasons for allowing the defendant to remain shackled, and he should give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled. ***
>
>       ***
>
> A reviewing court examines whether the trial court abused its discretion in requiring the defendant to appear shackled before the jury." *Id.* at 266-67.

¶ 11   In the present case, the State argues that the trial court did not abuse its discretion in allowing the restraints to remain on the defendant during the trial without conducting a *Boose* hearing because it would have had valid reasons, such as defendant's outbursts, to restrain the defendant had one been conducted. We are not persuaded by this portion of the State's argument. The trial court did not perform a *Boose* analysis and did not state on the record its reasons for allowing the defendant to remain restrained during the trial; instead, the trial court deferred to the judgment of the jail staff in keeping the defendant restrained. As the Illinois Supreme Court stated in *People v. Allen*, 222 Ill. 2d 340 (2006):

"[T]his abdication of the trial court's responsibility is not acceptable. 'The court must rigorously control its own courtroom procedures and, consistent with the mandates of due process, protect the rights of the parties and the public.' " *Id.* at 348-49 (quoting *People v. Martinez*, 347 Ill. App. 3d 1001, 1004 (2004)).

¶ 12    However, as the State correctly argues, and the defendant ultimately concedes in his brief, the issue is forfeited by failing to object and preserve the error below. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Thus, the defendant next contends that we should review the issue under the plain error doctrine, arguing that his counsel was ineffective because his attorney failed to object to the restraints or raise the issue in a posttrial motion. The State, meanwhile, does not believe plain error review should apply and instead urges us to apply the doctrine of invited error and disregard the defendant's claims.

¶ 13    "[U]nder the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error." *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17. The State asserts that such is the case here, where the defendant acquiesced to the restraints without objection, with his counsel stating, "I don't think they can be seen by the jury, and I don't know that they're going to cause any issue." In his reply, the defendant urges this court not to apply this doctrine, arguing that he did not consent to the restraint, and that his counsel was ineffective for failing to object to the restraint on his behalf. Here, we need not reach whether the invited error doctrine applies, as even assuming *arguendo* that it does not, defendant is not entitled to the relief he is seeking.

¶ 14    In evaluating defendant's request for plain error review, we note that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention

of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). As the Illinois Supreme Court explained in *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005):

> "The plain-error doctrine *** allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances. First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. [Citation.] Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process. [Citations.] This so-called disjunctive test does not offer two divergent interpretations of plain error, but instead two different ways to ensure the same thing—namely, a fair trial."

¶ 15    However, just because a constitutional right was at issue does not mean that a defendant was denied a fair trial, as even constitutional errors can be forfeited if the error is not of such magnitude that it deprives the defendant of a fair trial. *Allen*, 222 Ill. 2d at 352. As the Illinois Supreme Court went on to explain in *Allen*:

> "[W]hile defendant *** has proven a due process violation which amounted to error by showing that he was required to wear [a restraint] at trial without the court having first determined that it was necessary, defendant has failed to persuade this court 'that the error was so serious that it affected the fairness of [his] trial and challenged the integrity of the judicial process.' [Citations.]
>
> *** [D]efendant cannot, and does not, claim that the evidence presented was closely balanced. Further, he has not shown that his presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised. In fact, defendant

8

wore the [restraint] into the third day of his jury trial with no objection, complaint, or any apparent difficulty consulting with his counsel. Thus, *** although the failure to conduct a *Boose* hearing under these circumstances is an error, defendant's failure to object and to carry his burden of persuasion amounts to forfeiture of the error, where he cannot establish that it prevented him from obtaining a fair trial. [Citations.]" *Id.* at 353-54.

¶ 16    Similarly, in the present case, defendant did not claim that the evidence was closely balanced, and he has failed to show that his presumption of innocence, his ability to assist his attorney, or the dignity of the proceedings was compromised. In fact, he wore the ankle restraints throughout the remainder of his jury trial without any objection, complaint, or apparent difficulty in consulting with his attorney. Thus, although the trial court erred in failing to conduct a *Boose* hearing under these circumstances, we find that plain error review is inapplicable because he has failed to show that the failure to conduct the hearing prevented him from receiving a fair trial, and thus the claim of error is forfeited. See *id.* at 351-52.

¶ 17    Turning to defendant's claim of ineffective assistance of counsel, we note that as the Illinois Supreme Court explained in *People v. Graham*, 206 Ill. 2d 465, 476 (2003):

"Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). [Citation.] Under *Strickland*, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.] A reasonable probability is a probability sufficient to undermine confidence in the result at trial. [Citation.] Unless the defendant makes both showings, we cannot conclude that he received ineffective assistance. [Citation.] That is, if an ineffective-assistance claim can be

9

disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient. [Citation.]"

¶ 18 In the present case, where the record demonstrates that (1) the restraint was not visible to the jury due to the skirting around the defense table where the defendant was seated and (2) the defendant does not point to any concrete prejudice suffered as a result of having worn the ankle restraint (in his brief, he speculates that the jury may have inferred contempt from his failure to rise; however, Illinois courts have dismissed such arguments as juries are usually unfamiliar with courtroom procedure (see *Allen*, 222 Ill. 2d at 358)), we find that the defendant has not shown that there is a reasonable probability that the result of the trial would have been different had he not been wearing the restraint. Accordingly, he fails to show the required prejudice to satisfy the second prong of the *Strickland* test, and therefore the defendant's ineffective-assistance-of-counsel claim must fail. See *Graham*, 206 Ill. 2d at 476.

¶ 19                                   III. CONCLUSION

¶ 20 Based on the foregoing, we find that by not objecting to his ankles being shackled during the jury trial, the defendant failed to preserve the issue of being restrained at trial without a *Boose* hearing for appeal and thereby forfeited the issue. Further, plain error review does not apply under *Allen* where the defendant does not allege the evidence was closely balanced, and he does not point to anything specific in the record to meet his burden of showing that he failed to receive a fair trial as a result of the complained-of error. Finally, we find his counsel was not ineffective under *Strickland* where he suffered no prejudice as a result of counsel's alleged ineffective assistance.

¶ 21 Affirmed.